**2013 UT App 85**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,

*Plaintiff and Appellee,*

*v.*

MICHAEL DENNIS LOEFFEL,

*Defendant and Appellant.*

Memorandum Decision
No. 20120108-CA
Filed April 4, 2013

Fifth District, St. George Department
The Honorable G. Rand Beacham
No. 081500761

Gary W. Pendleton, Attorney for Appellant
John E. Swallow and Ryan D. Tenney, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Memorandum
Decision, in which JUDGES J. FREDERIC VOROS JR.
and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1      Defendant Michael Dennis Loeffel appeals his conviction for three counts of aggravated assault, a third degree felony. *See* Utah Code Ann. § 76-5-103 (LexisNexis 2008).[1] We affirm.

---

1. Because there have been subsequent amendments to the applicable statutory provisions, we cite the version of the Utah Code in effect at the time of the incident.

¶2      "When reviewing a jury verdict, we examine the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict, and we recite the facts accordingly." *State v. Kruger*, 2000 UT 60, ¶ 2, 6 P.3d 1116. On April 24, 2008, the police were notified of a public disturbance and possible domestic dispute between Defendant and his girlfriend. An off-duty police officer responded to the call and drove to the location of the disturbance in his personal vehicle. The officer spotted Defendant and his girlfriend driving in Defendant's truck and followed them back to Defendant's house. Defendant's girlfriend entered the home, and Defendant stood in the yard for twenty or thirty seconds before entering behind her. The officer did not approach Defendant or attempt to make contact with either person when he reached Defendant's home, and he left a few moments later to get his official squad car.

¶3      When the officer returned in his squad car, he approached the front of Defendant's house. Defendant was standing inside the screen-enclosed porch at the front of the house, and he refused to unlock the screen door and come out to talk with the officer when asked. Defendant eventually went back inside the house, and the officer returned to his vehicle to wait for backup.[2]

¶4      Three additional officers arrived at the home soon after, and they began calling out to Defendant and his girlfriend with a loudspeaker. This prompted Defendant to come back out of his house and begin swearing and yelling very loudly at the officers from the enclosed porch. The officers repeatedly asked Defendant to come out of the porch area to speak with them, but Defendant refused each time. While he was screaming at the officers, Defendant referred to a gun and said that the officers were "fair game" if they tried to enter his house. Defendant also told the

---

2. The officer testified that, consistent with his training on domestic violence situations, he was not going to leave the home until he could separate the parties and make sure that they were both all right.

officers that if they approached, "it's on." During the commotion, Defendant's girlfriend came out onto the porch. The officers started encouraging her to come out of the porch area to talk and informed Defendant that if he prevented her from coming out to speak to them, he could be charged with kidnapping. Defendant's girlfriend eventually agreed to speak with the officers outside, and as she moved to unlock the screen door, Defendant went back inside his house and slammed the door.

¶5     Concerned that Defendant had gone in to retrieve the gun he had referred to, the officers drew their weapons and proceeded through the screen door that Defendant's girlfriend had unlocked and through which she had just exited. The officers kicked the front door of the house open[3] and found Defendant in the entryway holding what turned out to be a loaded rifle with the safety off. One officer testified that Defendant was holding the rifle at the "low ready" position, and two of the officers testified that he started to raise the rifle toward them when they entered the house. As soon as he began to raise the rifle, the officers opened fire on Defendant, hitting him twice.

¶6     Because Defendant stated that he would shoot the officers if they entered his home and then pointed a rifle at them when they actually entered, Defendant was arrested and charged with, inter alia, three counts of aggravated assault. At the close of evidence at trial, the court instructed the jury on the elements of aggravated assault and included an instruction on a reckless mental state. Defendant objected to the instruction, arguing that recklessness was insufficient to satisfy the offense's mens rea requirement. The court overruled the objection and allowed the instruction. Defendant was ultimately convicted. He now appeals.

_____

3. Defendant mentions the Fourth Amendment only in the context of his argument that there was insufficient evidence to support his conviction. The lawfulness of the entry is thus not before us.

¶7     Defendant argues that the trial court erred by instructing the jury that aggravated assault can be committed by recklessly threatening to do bodily injury to another. "Claims of erroneous jury instructions present questions of law that we review for correctness." *State v. Jeffs*, 2010 UT 49, ¶ 16, 243 P.3d 1250. Defendant also contends that even if aggravated assault can be committed recklessly, the State presented insufficient evidence to support his conviction. When reviewing an insufficiency of the evidence claim, we will reverse a jury verdict only if the evidence "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he or she was convicted." *State v. Maestas*, 2012 UT 46, ¶ 302, (citation and internal quotation marks omitted).

¶8     Defendant first argues that the word "threat" and the phrase "show of immediate force or violence," as those terms are used in Utah Code section 76-5-102, plainly involve intentional or knowing conduct. *See* Utah Code Ann. § 76-5-102 (LexisNexis 2008). He reasons that a jury instruction on recklessness undermines the offense's prescribed mental state that can be inferred from the statutory text. We believe that the framework of Utah's criminal code, as well as a long line of precedent, contradicts Defendant's position.

¶9     A person is guilty of aggravated assault if that person commits an assault under Utah Code section 76-5-102 and, inter alia, uses a dangerous weapon as defined in Utah Code section 76-1-601(5).[4] *See id.* § 76-5-103(1)(b). For purposes of this appeal, an

---

4. Assault elevates to aggravated assault if an assault is accompanied by either of two aggravating factors. *See* Utah Code Ann. § 76-5-103(1)(a), (b) (LexisNexis 2008). Here, the jury was only instructed on the "dangerous weapon" aggravator. Defendant's rifle is certainly an "item capable of causing death or serious bodily

(continued...)

assault under section 76-5-102 is either "(a) an attempt, with unlawful force or violence, to do bodily injury to another "; or "(b) a threat, accompanied by a show of immediate force or violence, to do bodily injury to another."[5] *Id.* § 76-5-102(1)(a), (b). Under our criminal code, every offense not involving strict liability requires a prescribed culpable mental state. *See id.* § 76-2-102. However, if the definition of an offense "does not specify a culpable mental state and the offense does not involve strict liability, [then] intent, knowledge, or recklessness shall suffice to establish criminal responsibility." *Id.*

¶10 Nothing in the text of either assault provision explicitly prescribes a culpable mental state. *See id.* §§ 76-5-102, -103. Therefore, our statutory framework prescribes that section 76-2-102 controls and that the mens rea requirement defaults to "intent, knowledge, or recklessness." *See id.* § 76-2-102. Contrary to Defendant's assertion, section 76-2-102 is not merely a canon of interpretation or a non-binding suggestion that gives way to educated guesswork based upon inferences drawn from the language of a criminal offense. Rather, our cases confirm that section 76-2-102 controls when criminal offenses do not explicitly identify the applicable mens rea requirement. *See, e.g.*, *State v. Hutchings*, 2012 UT 50, ¶ 12, 285 P.3d 1183 (noting that in absence of some particular mens rea required in the assault statute, prosecution had to prove intent, knowledge, or recklessness); *State v. Royball*, 710 P.2d 168, 170 (Utah 1985) (holding that the mens rea statute controls unless a culpable mental state is otherwise specifically defined); *State v. McElhaney*, 579 P.2d 328, 328–29 (Utah 1978) (holding that because the applicable aggravated assault

---

4. (...continued)
injury," *see id.* § 76-1-601(5)(a), and therefore qualifies as a dangerous weapon.

5. The trial court did not instruct the jury on the third statutory type of assault, *see* Utah Code Ann. § 76-5-102(1)(c) (LexisNexis 2008), and we consequently do not address it here.

statute did not specify a culpable mental state, the mens rea statute controlled and allowed reckless conduct to establish criminal responsibility). Because neither the aggravated assault statute nor the underlying simple assault statute specified a more culpable mental state, section 76-2-102 controls. Accordingly, the trial court did not err in giving the jury a recklessness instruction.

¶11    Defendant next argues that there was insufficient evidence presented at trial to support his conviction even under a theory of recklessness. A person acts recklessly "with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur." Utah Code Ann. § 76-2-103(3) (LexisNexis 2008).

¶12    During the course of a volatile and profane confrontation with the police, Defendant referred to a gun and specifically told the officers that they were "fair game" if they attempted to enter his home. After making these threatening statements, Defendant retreated into his home and waited for the officers with his rifle at the ready. When the officers came through his front door, Defendant was standing in the entryway and began to raise his rifle toward them. Even if Defendant did not intend the statements he made on the porch as actual threats to inflict bodily injury on the officers, he certainly disregarded the risk that raising a rifle at the officers shortly after making such statements would amount to a threat accompanied by a show of immediate force or violence. *See id.* § 76-5-102(1)(b). Simply put, by telling the officers that they were "fair game" and then pointing a rifle at them, Defendant clearly satisfied the elements of aggravated assault, even if his conduct was not intentional or knowing. We conclude that the State put on more than enough evidence to allow a reasonable jury to convict Defendant.

¶13    Affirmed.

———