2016 UT App 70

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
PAUL RAYMOND JARAMILLO,
Appellant.

Opinion
No. 20130988-CA
Filed April 7, 2016

Third District Court, Salt Lake Department
The Honorable Denise P. Lindberg
No. 101903165

David M. Corbett and Craig L. Pankratz, Attorneys
for Appellant

Sean D. Reyes and Kris C. Leonard, Attorneys
for Appellee

JUDGE J. FREDERIC VOROS JR. authored this Opinion, in which
JUDGE MICHELE M. CHRISTIANSEN and JUSTICE JOHN A. PEARCE
concurred.[1]

VOROS, Judge:

¶1    Paul Raymond Jaramillo appeals his convictions on multiple felony counts arising from a crime spree in Salt Lake City and Centerville. During the spree, he entered a young woman's car, held a knife to her throat, and ordered her to drive

---

1. Justice John A. Pearce began his work on this case as a member of the Utah Court of Appeals. He became a member of the Utah Supreme Court thereafter and completed his work on the case sitting by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 3-108(3).

him home; attempted to rob a convenience store customer; broke into a fast food restaurant; and jumped on a vehicle in an apparent attempt to steal it. His principal claim on appeal is that his trial counsel provided constitutionally ineffective assistance when she did not introduce expert testimony that he might have ingested a large amount of anti-anxiety medication some time before these events. He also challenges his sentence of 15 years to life for aggravated kidnapping. We affirm on the first issue and remand for further proceedings on the second.

## BACKGROUND

¶2 Around midnight on April 20, 2010, a grocery store clerk finished her shift in downtown Salt Lake City. As she left the parking lot, Jaramillo flagged her down. Thinking he needed to ask her a question, the clerk slowed her car. Jaramillo opened the passenger-side car door and jumped in. He asked her to "give him a ride just down the street." He said that "[h]is friends had left him" and that he "was very tired and didn't want to walk anymore."

¶3 The clerk agreed to drive him down the street, but once they left the parking lot, Jaramillo demanded that she drive him to Ogden. When she refused, he cupped one hand over her mouth and held a knife to her throat with the other. She began driving, but told him she could not drive with his hand on her mouth and a knife at her throat. He lowered the knife, but kept his hand on the back of her neck until they reached the freeway. At the freeway on-ramp, Jaramillo made her pull over and told her that he would drive. She refused, telling him her car was "temperamental." He eventually allowed her to keep driving but told her not to look in the rearview mirror, speed, or do anything suspicious. He asked her questions about her car and its sound system, and whether she had any money, credit cards, or bank accounts. He rummaged through her car, taking and lighting a cigarette, and donning a hooded sweatshirt he found in the car.

¶4     The clerk told Jaramillo that she had to stop for gas. He let her stop in Centerville. But he warned her not to "do anything stupid," because he was not afraid to stab her. She pulled the car into a gas station and stopped at a fuel pump. Jaramillo demanded that she give him her money and cell phone. She gave him nine dollars but told him her cell phone was dead. When he responded that she could do this "the easy way or the hard way," she surrendered the phone. They both got out of the car and, as soon as he walked toward the convenience store, she ran across the parking lot and hid.

¶5     Inside the convenience store, a customer was buying a snack. Jaramillo walked into the store, said he had a gun, and demanded the clerk's car key. The clerk pushed Jaramillo away. Jaramillo then turned his attention to the customer, demanding his car key. Before the customer could answer, Jaramillo hit him. The two struggled until the customer pushed Jaramillo out the door. Jaramillo ran away and the customer went to his SUV in the parking lot.

¶6     Jaramillo ran across the parking lot to a closed fast food restaurant and pounded on the drive-through window. When no one responded, he began pulling on the locked doors. An employee called the police just before Jaramillo broke the lock and walked in. Jaramillo demanded money from one of the employees. When the employee ran out the door, Jaramillo followed him.

¶7     In the parking lot, Jaramillo again encountered the convenience store customer, now sitting in his idling SUV. Jaramillo stood in front of the SUV and demanded the car key. When the customer refused, Jaramillo jumped onto the hood of the SUV. The customer thought he could get Jaramillo off of his SUV if he drove forward slowly and then hit the brakes. When the customer tried this, Jaramillo fell, and the SUV ran over him.

When the police arrived, Jaramillo was unconscious, his legs under the SUV. Paramedics life-flighted him to the hospital.

¶8     Jaramillo was charged with multiple felony counts. The trial court appointed a defense attorney. After a preliminary hearing and some discovery, Jaramillo requested and received a new attorney. Jarmillo did this two more times, and each time the court appointed new attorneys. Finally, trial counsel entered her appearance. Although Jaramillo filed multiple pre-trial complaints about trial counsel's representation, in the end he cooperated with her, and she represented him throughout the remaining trial court proceedings.

¶9     Trial counsel did not present an opening statement or any evidence to the jury. Counsel relied on cross-examination to attack the adequacy of the police investigation and advance a voluntary intoxication defense. Counsel established that witnesses told police that Jaramillo demonstrated "bizarre" and erratic behavior. The court also allowed counsel to question a police officer about witness statements that Jaramillo "might be high on drugs" and that "he might be drunk or something" for the limited purpose of calling into question the adequacy of the police investigation. The court did not allow counsel to present to the jury Jaramillo's claim that he ingested 15 Xanax[2] pills the day of the attack.

¶10    The jury convicted Jaramillo of two counts of aggravated robbery, both first-degree felonies; aggravated kidnapping, a first-degree felony; aggravated assault, a third-degree felony; possession of a dangerous weapon by a restricted person, a third-

---

2. Xanax is the brand name of a benzodiazepine "used to treat anxiety disorders, panic disorders, and anxiety caused by depression." *Xanax*, Drugs.com, http://www.drugs.com/xanax.html [https://perma.cc/C75W-T58C] (last visited Feb. 23, 2015).

degree felony; and criminal trespass, a class B misdemeanor. He appeals.

## ISSUES ON APPEAL

¶11 Jaramillo contends that his trial counsel "rendered ineffective assistance of counsel by failing to investigate and present clearly exculpatory evidence" showing that Jaramillo had "ingested a mind-altering chemical" before committing the crimes. He also requests that we remand this case to the trial court under rule 23B of the Utah Rules of Appellate Procedure to create a record to support his ineffective assistance of counsel claim.

¶12 Jaramillo also contends that in sentencing him to a term of fifteen years to life, the court did not consider proportionality or rehabilitation as required by the aggravated kidnapping statute. *See* Utah Code Ann. § 76-5-302 (LexisNexis Supp. 2013).

## ANALYSIS

### I. Rule 23B Remand

¶13 Jaramillo seeks remand to the trial court to create a record supporting his claim that he received ineffective assistance from his trial counsel. He contends that trial counsel failed to "investigate the facts" and present evidence to support a voluntary intoxication defense.

¶14 Utah Rule of Appellate Procedure 23B "provides a mechanism for criminal defendants to supplement the record with facts that are necessary for a finding of ineffective assistance of counsel but which do not appear in the record." *State v. Griffin*, 2015 UT 18, ¶ 17. A rule 23B motion "shall be available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support

a determination that counsel was ineffective." Utah R. App. P. 23B(a).

¶15     "There are four basic requirements for obtaining a 23B remand. First, the motion must be supported by affidavits setting forth facts that are not contained in the existing record." *State v. Norton*, 2015 UT App 263, ¶ 6, 361 P.3d 719 (citation and internal quotation marks omitted). "Second, the defendant must provide allegations of fact that are not speculative." *Griffin*, 2015 UT 18, ¶ 19. "The third and fourth elements of the . . . test come from the rule's mandate that the alleged facts could support a determination that counsel was ineffective." *Id.* ¶ 20 (citation and internal quotation marks omitted). "To succeed on an ineffective assistance of counsel claim, a defendant must 'establish that his counsel rendered a deficient performance in some demonstrable manner, which performance fell below an objective standard of reasonable professional judgment.'" *Norton*, 2015 UT App 263, ¶ 7 (quoting *Griffin*, 2015 UT 18, ¶ 15). The defendant must also "show that counsel's performance prejudiced [him], meaning that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Griffin*, 2015 UT 18, ¶ 15 (citation and internal quotation marks omitted).

¶16     Voluntary intoxication does not serve as a defense to a criminal charge unless the intoxication "negates the existence of the mental state which is an element of the offense." Utah Code Ann. § 76-2-306 (LexisNexis 2012). Thus, "to prevail on a voluntary intoxication defense, [Jaramillo's] state of intoxication must have deprived him of the capacity to form the mental state necessary" for the charged offenses. *See Honie v. State*, 2014 UT 19, ¶ 49, 342 P.3d 182. "It is not enough to merely present evidence showing that the defendant [was intoxicated]." *Id.* ¶ 50. "Rather, to establish a viable voluntary intoxication defense, the defendant must point to evidence showing that he was so

intoxicated that he was incapable of forming the requisite mental state for the crimes committed." *Id.*

¶17   In support of his rule 23B motion, Jaramillo alleges that during trial, counsel "relied almost entirely on a voluntary intoxication defense," but while counsel "established that his conduct was consistent with intoxication, [counsel] failed to establish that he was actually intoxicated." Jaramillo maintains that an adequate investigation would have disclosed substantial evidence of his intoxication, including a report from his visit to an emergency center the day before the events leading to his convictions, which shows that the attending physician prescribed 15 Xanax pills; a hospital admission report from after the events showing he had benzodiazepine in his system; a behavioral health clinical assessment noting that he had an empty prescription bottle in his pocket; and excerpts of a police report. He also relies on affidavits from trial counsel and a forensic psychologist who evaluated Jaramillo five years after he committed these crimes.

¶18   The forensic psychologist's report asserts (1) that Jaramillo ingested Xanax, but it is impossible to determine how much Xanax he ingested; (2) that effects of acute Xanax intoxication "involve impaired judgment, disorganized thinking and behavior, extreme disinhibition, memory impairment and amnesia, motoric slowing and physical un-coordination, and somnolence (sleepiness)"; (3) that Jaramillo appears to have suffered amnesia after the event; (4) that "the question regarding whether Mr. Jaramillo was able to form the requisite specific intent to commit the crimes of which he has been convicted is complicated"; and (5) that "it is reasonable to conclude . . . that Mr. Jaramillo was acutely intoxicated to the extent that he was rendered unable to form specific intent."

¶19   This evidence might well support a finding that Jaramillo was intoxicated on the date of the crimes. But, as explained

above, "[e]vidence of intoxication, be it witness testimony or a numerical measure of the defendant's actual blood alcohol content, is not sufficient to establish a voluntary intoxication defense." *Honie*, 2014 UT 19, ¶ 55. Rather, a voluntary intoxication defense requires a showing "that he was incapable of forming the requisite mental state for the crimes committed." *Id.* ¶ 50. For example, in a murder case, a defendant must offer evidence "that his intoxication at the time of the offense prevented him from understanding that his actions were causing the death of another." *Id.* ¶ 55 (internal quotation marks omitted).

¶20 At a minimum, this standard requires a defendant (1) to identify the requisite mental state for the crimes committed and (2) to show how his intoxication prevented him from forming those mental states. Jaramillo has done neither. First, he has not identified the requisite mental states for any of the crimes of which he was convicted. And second, he has not shown, or even asserted, that his intoxication prevented him from forming those mental states.

¶21 Jaramillo was convicted of two counts of aggravated robbery, aggravated kidnapping, aggravated assault, possession of a dangerous weapon by a restricted person, and criminal trespass. The voluntary intoxication statute specifies that "if recklessness or criminal negligence establishes an element of an offense and the actor is unaware of the risk because of voluntary intoxication, his unawareness is immaterial in a prosecution for that offense." Utah Code Ann. § 76-2-306 (LexisNexis 2012). Aggravated assault may be committed by creating a substantial risk of bodily injury to another. *See id.* § 76-5-103(1)(a)(iii) (Supp. 2015). And it may be committed with an intentional or reckless mental state. *See State v. Loeffel*, 2013 UT App 85, ¶¶ 7–10, 300 P.3d 336. Jaramillo has not attempted to explain how, given these provisions, his proffered rule 23B evidence of voluntary intoxication could have supported voluntary intoxication as a defense to the charge of aggravated assault.

¶22 To take another example, the most serious crime Jaramillo committed was aggravated kidnapping. Various mental states apply to this crime. To commit simple kidnapping, an individual must act "intentionally or knowingly." Utah Code Ann. § 76-5-301(1) (2012). And as relevant here, an actor commits aggravated kidnapping by acting with the intent "to compel a third person to engage in particular conduct." *Id.* § 76-5-302(1)(b)(i) (Supp. 2013). The forensic psychologist's report opines that "it is reasonable to conclude . . . that Mr. Jaramillo was acutely intoxicated to the extent that he was rendered unable to form specific intent." But in fact nothing in this report or Jaramillo's other proffered rule 23B evidence acknowledges these mental states or demonstrates any tendency to negate their existence, that is, to disprove that Jaramillo acted intentionally or knowingly and with the intent to compel a person to engage in particular conduct. Uncontroverted trial testimony established that he instructed the grocery store clerk to drive to Ogden, held a knife to her throat, understood when she told him he needed to move his hands so she could see while driving, told her to pull over and let him drive on the freeway, agreed to let her drive her "temperamental" car, and agreed to let her stop for gas in Centerville. Nothing in the psychologist's report suggests that during this criminal episode Jaramillo did not intend to compel or did not know he was compelling a person to engage in particular conduct, that is, to drive him to Ogden. Indeed, even Jaramillo's brief states that he "simply wanted to go home."

¶23 In sum, Jaramillo has pointed to no evidence "showing he was so intoxicated that he was unable to form the requisite intent to commit" the charged offenses. *See Honie v. State*, 2014 UT 19, ¶ 61, 342 P.3d 182. We therefore conclude that the additional evidence Jaramillo provided in his rule 23B motion does not "show that counsel's performance prejudiced [him]" or, in other words, that "the result of the proceeding would have been different." *State v. Griffin*, 2015 UT 18, ¶ 15 (citation and

internal quotation marks omitted). Accordingly, his rule 23B motion is denied.

## II. Ineffective Assistance of Counsel

¶24    Jaramillo contends that trial counsel "rendered ineffective assistance of counsel by failing to investigate and present clearly exculpatory evidence" that Jaramillo "ingested a mind-altering chemical." "We review claims of ineffective assistance of counsel raised for the first time on appeal for correctness." *State v. Heywood*, 2015 UT App 191, ¶ 16, 357 P.3d 565 (citing *State v. Lucero*, 2014 UT 15, ¶ 11, 328 P.3d 841). To succeed on a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Houston*, 2015 UT 40, ¶ 70, 353 P.3d 55, *petition for cert. filed*, Nov. 25, 2015 (U.S. No. 15-7087).

¶25    "To establish that counsel was deficient, a petitioner must overcome the strong presumption that counsel rendered constitutionally sufficient assistance, by showing that counsel's conduct 'fell below an objective standard of reasonableness' under prevailing professional norms." *Lafferty v. State*, 2007 UT 73, ¶ 12, 175 P.3d 530 (quoting *Strickland*, 466 U.S. at 688). "In accordance with these norms, our cases recognize that counsel has an important duty to adequately investigate the underlying facts of the case." *State v. Lenkart*, 2011 UT 27, ¶ 27, 262 P.3d 1 (citation and internal quotation marks omitted). However, "it is within counsel's discretion to make reasonable decisions regarding the extent to which particular investigations are necessary." *State v. Montoya*, 2004 UT 5, ¶ 24, 84 P.3d 1183 (citing *Strickland*, 466 U.S. at 691).

¶26    To establish that counsel's performance resulted in prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*,

466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *State v. Nelson*, 2015 UT 62, ¶ 28, 355 P.3d 1031 (citation and internal quotation marks omitted). "Instead, the likelihood of a different result must be substantial and sufficient to undermine confidence in the outcome." *Id.* (citation and internal quotation marks omitted).

¶27 To support the ineffective assistance claims in his appellate brief, Jaramillo relies primarily on the contents of his rule 23B filings. "We consider [the evidence] supporting Rule 23B motions solely to determine the propriety of remanding ineffective assistance of counsel claims for evidentiary hearings." *State v. Bredehoft*, 966 P.2d 285, 290 (Utah Ct. App. 1998). The emergency center report, hospital admission report, behavioral health assessment, police report, and accompanying affidavits "are therefore not a part of the record before this court, and we do not consider new evidence on appeal." *See State v. Norton*, 2015 UT App 263, ¶ 15, 361 P.3d 719 (citation and internal quotation marks omitted). "A defendant cannot bring an ineffective assistance of counsel claim on appeal without pointing to specific instances in the record demonstrating both counsel's deficient performance and the prejudice it caused the defendant." *State v. Griffin*, 2015 UT 18, ¶ 16.

¶28 Although Jaramillo relies primarily on non-record evidence from his rule 23B motion to argue ineffective assistance of counsel, he does point to one specific instance in the record to support his claim. Trial counsel did attempt to support Jaramillo's voluntary intoxication defense through a police officer's testimony. Jaramillo argues that this attempt shows that trial counsel "knew" he had taken 15 Xanax before the events leading to his convictions. He argues that, based on this knowledge, "counsel should have fully investigated [his]

intoxication and its effect on his ability to form the necessary mental state to commit the crimes for which he was charged."

¶29    Notwithstanding trial counsel's attempt, the record on appeal simply does not reflect the extent of trial counsel's knowledge of Jaramillo's Xanax use. Without "specific instances in the record" pointing to deficient performance, *Griffin*, 2015 UT 18, ¶ 16, we must "indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Trial counsel is "entitled to . . . balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (2011). Jaramillo's claim therefore fails to show that counsel performed deficiently. *See Strickland*, 466 U.S. at 688.

¶30    In addition to falling short of the necessary showing under the first prong of *Strickland*, Jaramillo cannot show that even if his counsel had known of and presented evidence of Jaramillo's possible Xanax use, "the result of the proceeding would have been different." *Id.* As previously stated, even if counsel had shown that Jaramillo ingested 15 Xanax pills, this showing would not have raised a reasonable doubt as to whether "he was incapable of forming the requisite mental state for the crimes committed." *See Honie v. State*, 2014 UT 19, ¶ 50, 342 P.3d 182. Accordingly, Jaramillo's ineffective assistance of counsel claim fails.

## III. Sentencing

¶31    Jaramillo contends that the trial court abused its discretion when it "did not engage in the interests-of-justice analysis required by Utah Code section 76-5-302 [when it

sentenced him] for the aggravated kidnapping charge."[3] He argues that the interests-of-justice analysis "must include 'principles of proportionality and a recognition of the rehabilitative potential of individual defendants.'" (Quoting *LeBeau v. State*, 2014 UT 39, ¶ 36, 337 P.3d 254.)

¶32 "We afford the trial court wide latitude in sentencing and, generally, will reverse a trial court's sentencing decision only if it is an abuse of the judge's discretion." *State v. Alfatlawi*, 2006 UT App 511, ¶ 14, 153 P.3d 804 (citation and internal quotation marks omitted). "In general, a trial court's sentencing decision will not be overturned unless it exceeds statutory or constitutional limits, the judge failed to consider all the legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." *State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17 (citation and internal quotation marks omitted).

¶33 Under Utah Code section 76-5-302, aggravated kidnapping not involving serious bodily injury or a prior conviction for a "grievous sexual offense" is a "first degree felony punishable by a term of imprisonment of . . . not less than 15 years and which may be for life." Utah Code Ann. § 76-5-302(3) (LexisNexis Supp. 2013). But a sentencing court may, in the interests of justice, impose a lesser minimum term:

> If, when imposing a sentence . . . , a court finds that a lesser term . . . is in the interests of justice and states the reason for this finding on the record, the

---

3. Alternatively, Jaramillo argues that his sentence should be reviewed under rule 22(e) of the Utah Rules of Criminal Procedure or as a claim of ineffective assistance of counsel. Because we conclude that the sentencing court should have conducted the interests-of-justice analysis, we need not and do not address these arguments.

> court may impose a term of imprisonment of not
> less than . . . 10 years and which may be for life; or
> six years and which may be for life.

*Id.* § 76-5-302(4). In *LeBeau v. State*, 2014 UT 39, 337 P.3d 254, our supreme court interpreted the aggravated kidnapping statute and concluded that it requires a sentencing court to "engage in the interests-of-justice analysis laid out in subsection (4)." *Id.* ¶ 21. The court held that the interests-of-justice analysis "necessarily requires the [sentencing] court to consider the proportionality of the defendant's sentence in relation to the severity of his offense. Additionally, it requires that sentencing judges appropriately weigh a defendant's potential for rehabilitation." *Id.* ¶ 37.

¶34 Although the supreme court decided *LeBeau* one year after Jaramillo was sentenced and filed this appeal, the court has recently recognized "a rule of retroactive application to all cases pending on direct review of new rules of criminal procedure announced in judicial decisions." *State v. Guard*, 2015 UT 96, ¶¶ 31, 67. Accordingly, *LeBeau* applies to this appeal.[4]

A.     Preservation

¶35 The State argues that Jaramillo failed to preserve his sentencing claim because counsel's "argument was wholly insufficient to alert the court to the error now claimed on appeal—that it failed to consider proportionality and rehabilitation factors comprising the interests-of-justice analysis." Jaramillo responds that he asked the court to consider "a six to life" sentence and a number of mitigating factors, which he contends preserved his proportionality and rehabilitation arguments.

---

4. Jaramillo assumes, and the State does not dispute, that the rule announced in *LeBeau* applies to this appeal.

¶36   "[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (alterations in original) (citations and internal quotation marks omitted). "Where an argument is not preserved below, we will only review the issue if exceptional circumstances exist or if the lower court committed plain error." *Hill v. Estate of Allred*, 2009 UT 28, ¶ 24, 216 P.3d 929.

¶37   Jaramillo preserved this claim at least as well as LeBeau did. LeBeau's argument at sentencing centered on giving the Board of Pardons and Parole discretion to consider LeBeau's future reformation:

> Although what he's convicted of is extraordinarily serious, there ought to be some possibility of hope, some possibility that at some distant point in time if he can demonstrate a sufficient reformation by that time, that the State would—that the Board of Pardons would at least be in a position to consider it.

*State v. Lebeau*, 2012 UT App 235, ¶ 31, 286 P.3d 1, *rev'd*, 2014 UT 39, 337 P.3d 254.[5] Jaramillo's argument tracked LeBeau's closely, and even mentioned proportionality specifically:

> Mr. Jaramillo has spent a lot of time in prison; however, his criminal history is not awful. . . . We certainly see people who have a much worse criminal history. . . . Clearly, the [Board of Pardons

---

5. The court of appeals captioned the case *State v. Lebeau*. *See* 2012 UT App 235, 286 P.3d 1. On certiorari, the supreme court captioned the case *LeBeau v. State. See* 2014 UT 39, 337 P.3d 254. We do not attempt to resolve the discrepancy here.

> and Parole], who is well-equipped to look at the history, look at how he does in prison, all of those things, has a life top and can do with Mr. Jaramillo what they will.

A majority of our supreme court treated LeBeau's claim as preserved notwithstanding a dissent arguing that he had not preserved it. *See LeBeau*, 2014 UT 39, ¶ 97 (Lee, J., dissenting). If LeBeau's claim was preserved, a fortiori Jaramillo's claim was.[6]

B.      Interests-of-Justice Analysis

¶38    In *LeBeau v. State*, the supreme court determined that "the Legislature did not intend the phrase 'interests of justice' as a mere substitute for the weighing of aggravating and mitigating circumstances." *Id.* ¶ 30. Instead, the *LeBeau* court concluded, an interests-of-justice analysis "necessarily requires the court to consider the proportionality of the defendant's sentence in

---

6. Jaramillo does not rely on exceptional circumstances as an alternative to preservation. Exceptional circumstances "is a descriptive term used to memorialize an appellate court's judgment that even though an issue was not raised below and even though the plain error doctrine does not apply, unique procedural circumstances nonetheless permit consideration of the merits of the issue on appeal." *State v. Irwin*, 924 P.2d 5, 8 (Utah Ct. App. 1996). Utah appellate courts have "employed the 'exceptional circumstances' rubric where a change in law or the settled interpretation of law colored the failure to have raised an issue at trial." *Id.* at 10. *But cf. Hill v. Estate of Allred*, 2009 UT 28, ¶¶ 25–29, 216 P.3d 929 (concluding that appellant's failure "to recognize that such an argument existed does not present an exceptional circumstance"). Here, the interests-of-justice analysis in *LeBeau* might be seen as "a change in . . . the settled interpretation of law," *see Irwin*, 924 P.2d at 10, coloring any failure to have raised the issue at trial.

relation to the severity of his offense. Additionally, it requires that sentencing judges appropriately weigh a defendant's potential for rehabilitation." *Id.* ¶ 37.

### 1.     Proportionality

¶39    Proportionality analysis requires the sentencing court to "consider 'the gravity of the offense and the harshness of the penalty.'" *LeBeau v. State*, 2014 UT 39, ¶ 42, 337 P.3d 254 (quoting *Solem v. Helm*, 463 U.S. 277, 290–91 (1983)). "[C]ourts should consider all relevant facts raised by the parties about the defendant's crime in relation to the harshness of the penalty." *Id.* Relevant facts may include whether the defendant committed a violent crime, "the absolute magnitude of the crime," *id.* ¶ 44, and "the culpability of the offender," *id.* ¶ 45. Proportionality analysis also requires the sentencing court to "compare the sentence being imposed to the sentences imposed for other crimes in Utah." *Id.* ¶ 47. In other words, "courts should consider the sentences imposed for more and less serious crimes in order to ensure that a particular defendant's sentence is not arbitrary." *Id.*

¶40    Here, the sentencing court appears not to have considered this comparative factor.[7] The court found that Jaramillo

---

7. "[A]s a general rule, we presume that the district court made all the necessary considerations when making a sentencing decision." *State v. Moa*, 2012 UT 28, ¶ 35, 282 P.3d 985. "A sentencing judge is not required to articulate what information [he] considers in imposing a sentence . . . ." *Id.* ¶ 40. Accordingly, this court "will not assume that the trial court's silence, by itself, presupposes that the court did not consider the proper factors as required by law." *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626. However, because the supreme court decided *LeBeau* after Jaramillo was sentenced, we review the sentencing court's findings for the necessary considerations.

"terrorized" the grocery store clerk and that he "understood what [he was] doing" when he committed the crimes. The court then "considered whether a lesser term of imprisonment [was] warranted in light of all interactions." It "conclude[d] that the interest of justice would not be served by imposing a lesser sentence." But the court did not "compare the sentence being imposed" to the sentences imposed for more and less serious crimes in order to ensure that Jaramillo's sentence was not arbitrary.[8] Accordingly—though understandable given the sequence of events—the sentencing court "failed to consider all the legally relevant factors." *State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17. This omission requires us to vacate Jaramillo's sentence and remand for resentencing.

## 2. Rehabilitation

¶41    *LeBeau* also held, "Sentencing courts must consider all of the factors relevant to a defendant's rehabilitative potential." *LeBeau*, 2014 UT 39, ¶ 54. These include "a defendant's age at the time of the commission of the crime," "the extent to which a defendant's crime was tied to alcohol or drug addiction and the defendant's prospects for treatments," and the "extent to which a defendant's criminal history evidences violence." *Id.* (citation and internal quotation marks omitted). The court may also use the "Sentencing Commission's guidelines, several of which relate to a defendant's capacity for rehabilitation." *Id.*

¶42    Jaramillo argues that the sentencing court "did not consider [his] potential for rehabilitation" or "contemplat[e] therapeutic and psychiatric intervention." The court heard from both Jaramillo and his counsel at sentencing. Both emphasized

---

8. *See, e.g.*, Utah Code Ann. § 76-5-203(3)(b) (LexisNexis 2012) ("A person who is convicted of murder shall be sentenced to imprisonment for an indeterminate term of not less than 15 years and which may be for life.").

that Jaramillo had changed since being "on the right medication." The court also had the benefit of the presentence report containing information about Jaramillo's criminal and personal history, as well as the two alienists' reports. Each of these factors before the sentencing court speaks to Jaramillo's potential for rehabilitation, and we presume that the district court considered them. However, on remand we invite the district court to take a second look at Jaramillo's potential for rehabilitation if the court deems that factor relevant to its sentencing decision.

¶43 In sum, because "new rules of criminal procedure announced in judicial decisions" retroactively apply to all cases pending on direct review, *State v. Guard*, 2015 UT 96, ¶ 31, Jaramillo's sentence must be reviewed through *LeBeau*'s interests-of-justice analysis. The sentencing court must consider both "the proportionality of the defendant's sentence in relation to the severity of his offense" and the "defendant's potential for rehabilitation." *See LeBeau*, 2014 UT 39, ¶ 37. We remand this case to allow the district court to do so.

CONCLUSION

¶44 Jaramillo has not shown that, even accepting as true the material supporting his rule 23B motion, he received ineffective assistance of counsel. Accordingly we deny his rule 23B motion for remand and his ineffective assistance claim on appeal. We also conclude that *LeBeau v. State* requires an interests-of-justice analysis of Jaramillo's sentence for aggravated kidnapping. We therefore affirm Jaramillo's convictions, but vacate Jaramillo's sentence and remand for further proceedings consistent with this opinion.

_____