*This opinion is subject to revision before final publication in the Pacific Reporter*

**2018 UT 46**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellant,*

*v.*

ABISAI MARTINEZ-CASTELLANOS,
*Appellee.*

No. 20170323
Filed August 29, 2018

On Certiorari to the Utah Court of Appeals

Fourth District, Nephi
The Honorable James M. Brady
No. 101600146

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen., Salt Lake City, for appellant

Aaron P. Dodd, Provo, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

**Introduction**

¶1   Abisai Martinez-Castellanos was charged with two counts of possession of or use of a controlled substance and one count of possession of drug paraphernalia after a highway trooper discovered drugs and drug paraphernalia in his vehicle during a traffic stop. Before his trial began, his counsel failed to involve him in the jury selection process. His counsel also filed a motion to suppress the traffic stop evidence but repeatedly failed to file any memorandum in support of the motion.

¶2     After the jury convicted Mr. Martinez-Castellanos, the trial court, on its own accord, issued notice that it was considering granting a new trial because of his trial counsel's ineffectiveness during the jury selection and motion to suppress stages. The court appointed separate conflict counsel to represent Mr. Martinez-Castellanos on the issues it raised. But conflict counsel chose to act as a "friend of the court" instead of representing Mr. Martinez-Castellanos. Conflict counsel argued against Mr. Martinez-Castellanos's interests, asserting that his trial counsel's failure did not amount to ineffective assistance of counsel. The trial court thereafter declined to grant a new trial.

¶3     Mr. Martinez-Castellanos appealed his conviction, arguing that his counsel was ineffective during the jury selection and the motion stages, and that the trial court erred in its dealings with conflict counsel. While the court of appeals agreed that Mr. Martinez-Castellanos's three claims constituted errors, it concluded that none of these errors warranted reversal on its own. It did so, in part, because it could not determine whether, absent trial counsel's error, Mr. Martinez-Castellanos's motion to suppress would have been meritorious. But the court did hold that the cumulative effect of these errors undermined its confidence that Mr. Martinez-Castellanos received a fair trial. So it reversed his convictions and ordered a new trial with new counsel.

¶4     The State challenges the court of appeals' determination, arguing that the errors cited by the court did not harm Mr. Martinez-Castellanos in the slightest and so the cumulative error doctrine cannot apply. We agree. Without a determination that the motion to suppress is meritorious, at least two of the three errors at issue cannot conceivably cause harm to him, so they cannot cumulate into reversible error. So we reverse the court of appeals' decision. With such a determination, however, these errors would not only be harmful, they would constitute reversible error on their own. So we cannot uphold Mr. Martinez-Castellanos's conviction, because the court of appeals failed to determine whether his motion to suppress was meritorious. We therefore remand this case to the court of appeals to make this determination.

### Background

*The Traffic Stop*

¶5   In June 2010, Abisai Martinez-Castellanos was driving his car on Interstate 15 through Juab County.[1] A trooper, who had just finished up a traffic stop on the opposite side of the highway, observed Mr. Martinez-Castellanos's car traveling northbound. The trooper got in his patrol car and, with his emergency lights still engaged, crossed the median and accelerated in order to get closer to Mr. Martinez-Castellanos's car. Once the car was within view, the trooper noticed that the California license plate of the vehicle was missing a registration sticker—a requirement on vehicles registered in California. The trooper proceeded to pull Mr. Martinez-Castellanos over.

¶6   Once his vehicle was pulled to the side of the road, Mr. Martinez-Castellanos provided the trooper with an expired Colorado license and registration, but he assured the trooper that he had a valid Utah Driver license. While discussing Mr. Martinez-Castellanos's information, the trooper testified that he noticed Mr. Martinez-Castellanos was "a little bit jittery" and was "bouncin' around a little bit." The trooper then proceeded to check Mr. Martinez-Castellanos's information in his patrol car and also ran a warrants and background check. The trooper verified that the car was indeed registered and that Mr. Martinez-Castellanos had a valid Utah Driver license. But he also discovered that Mr. Martinez-Castellanos had miscellaneous theft charges dating back to 1997, charges for drug offenses in 2001 and 2006, and that he had his probation revoked in 2007 for possessing a controlled substance. Based on this criminal history, along with Mr. Martinez-Castellanos's jittery movements, the trooper testified that he had a "heightened" suspicion that Mr. Martinez-Castellanos "might be [under] the influence of something."

¶7   The trooper then returned to the car and asked Mr. Martinez-Castellanos to step out of the vehicle. Before administering several field sobriety tests, the trooper asked Mr. Martinez-Castellanos if he had any weapons, to which he

---

[1] "On review of a jury verdict, we recite the evidence, and all the reasonable inferences that flow from the evidence, in the light most favorable to the verdict." *State v. Wilder*, 2018 UT 17, ¶ 4 n.1, 420 P.3d 1064.

responded that he had two work knives in the center console. After conducting field sobriety tests, the trooper concluded that Mr. Martinez-Castellanos was under the influence of a controlled substance. The trooper also concluded, based on Mr. Martinez-Castellanos's criminal history, that Mr. Martinez-Castellanos was a restricted person who could not legally possess knives. The trooper then arrested Mr. Martinez-Castellanos and searched his car. His search revealed two pocket knives, a marijuana grinder, a lighter, two glass pipes, a wrapper containing three pills that later tested positive for methamphetamine, and a wrapper containing several prescription pills.

¶8    The trooper took Mr. Martinez-Castellanos to jail, where he admitted that he had smoked marijuana. The trooper obtained a warrant for a blood draw, which tested positive for THC metabolite at a level consistent with recent marijuana use. Mr. Martinez-Castellanos's blood tested negative for a number of other drugs, including methamphetamine. He also admitted that the knives were his but claimed to know nothing about the other drugs and paraphernalia in his car.

¶9    The State charged Mr. Martinez-Castellanos with counts of drug possession, paraphernalia possession, and possession of a dangerous weapon by a restricted person.

*The Motion to Suppress*

¶10 Before trial, Mr. Martinez-Castellanos's appointed trial counsel filed a motion to suppress the evidence from the car and the blood draw, asserting that the evidence was unconstitutionally seized. But trial counsel did not file an accompanying memorandum with the motion. The trial court then held an evidentiary hearing on the motion where the trooper testified for the prosecution and was cross-examined by trial counsel. At the end of the hearing, trial counsel requested thirty days to "submit a brief on the matter," which the trial court granted. But trial counsel again failed to file a timely brief. A week after it was due, trial counsel submitted a motion "request[ing] additional time in which to file his brief regarding the suppression of evidence." The court again granted the motion, but trial counsel again failed to file a brief supporting the motion. Having received nothing from trial counsel, the State finally submitted its own memorandum in opposition to the motion to suppress. Again, trial counsel did not respond, and the court eventually denied the motion.

¶11 About two weeks after the motion was denied, trial counsel moved to set aside the court's decision and requested additional

time to file a memorandum in support of the motion. The court granted the request, giving counsel an additional week to file his supporting memorandum. But instead of filing a memorandum in support, trial counsel eventually filed a motion captioned "Submission of Motion to Suppress," which stated that counsel "submits the Motion to Suppress Evidence to the Court based upon the transcript of the suppression hearing." The trial court thereafter reinstated its prior order denying the suppression motion, noting that trial counsel had yet again failed to file a supporting memorandum.

¶12 But trial counsel was not done yet. Two days before trial, he moved to suppress the evidence, arguing that the dash-cam video demonstrated that there was "no basis" for the stop. No memorandum in support was filed with this motion. The trial court again denied the motion.

*Jury Selection and Trial*

¶13 Before trial began, twenty-six members of the jury pool filled out juror questionnaires and were asked background questions in open court about matters that might influence their opinions of the case. After completing these background questions, thirteen potential jury members were called back to the trial court's chambers for individual questioning by him and the attorneys. Mr. Martinez-Castellanos was not invited, however, into the chambers by the court or his counsel, and he remained in the courtroom while further questioning of the potential jury members took place.

¶14 Once in chambers, the court and attorneys asked the individual jury members follow-up questions to their answers in open court.[2] Three of the potential jurors called into chambers were

---

[2] Due to a technical issue, the audio recording of this in-chambers questioning is unintelligible. On appeal, Mr. Martinez-Castellanos moved the court of appeals to supplement the record with declarations from both counsel under rule 11(h) of the Utah Rules of Appellate Procedure. Both parties stipulated to the supplemental record, which was reconstructed roughly fifteen months after the fact from the memories of the participants. We rely on the reconstructed record here for what occurred during the in-chambers voir dire.

of particular concern. The most concerning, the individual who eventually sat on the jury as Juror One, revealed in chambers that he was a retired Utah Highway Patrol trooper who had forty years' worth of experience in drug interdiction on Utah's highways (a significant portion of which was spent on the stretch of highway where Mr. Martinez-Castellanos was arrested), and had participated in "many jury trials." He also acknowledged that he knew the arresting trooper, but he stated he would not give the trooper's testimony "more weight," but "would make up his mind based on the facts presented in court." He also "assured [both counsel] that he knew how to be fair, and that he could be fair if selected as a juror."

¶15 As to the other two jurors of concern, the individual who eventually sat as Juror Two revealed in chambers that she had been a victim of a violent crime, that her son had been prosecuted in California for drugs, that she was against drugs, and that she believed "that if a person had drugs in the car, they were probably guilty." And the individual who eventually sat as Juror Six was "reluctant to disclose what was going on in her own mind." When the court asked if she could be fair and impartial, she expressed "reservations about her ability to function as a juror." The court asked her the same question again and she responded that "she understood what the judge wanted and she believed she could serve as a juror."

¶16 After these questions, each of the thirteen prospective jurors was dismissed from the judge's chambers, and the court asked the attorneys whether they had any issues with a particular prospective juror and whether the attorneys passed the prospective jurors for cause. There is no evidence that any concern was raised about a particular prospective juror or that any were actually challenged for cause.

¶17 At the conclusion of the in-chambers questioning, the attorneys returned to the courtroom. Mr. Martinez-Castellanos's trial counsel did not discuss with him what had occurred in chambers and did not mention the possible biases of the three potential jurors. Trial counsel simply exercised his four peremptory strikes without consulting Mr. Martinez-Castellanos. Counsel did not strike Jurors One, Two, or Six.

¶18 The court named the eight members of the jury, which included Jurors One, Two, and Six, and a one-day trial was held. The jury convicted Mr. Martinez-Castellanos of two felonies for possession or use of a controlled substance and two related misdemeanors.

*Post-Trial Proceedings*

¶19 A week after the trial, the trial court issued a notice *sua sponte*, indicating that it was considering granting a new trial pursuant to rule 24 of the Utah Rules of Criminal Procedure. The notice stated that "the court is concerned with a question of whether any error or impropriety occurred in this case which may have had a substantial adverse effect on the rights of the defendant." Specifically, the court identified two events that, in its view, demonstrated Mr. Martinez-Castellanos possibly received ineffective assistance of counsel: "Defense counsel's failure to file any memorandum following an evidentiary hearing on [Mr. Martinez-Castellanos's] motion to suppress"; and "Defense counsel's failure to challenge or remove a potentially biased juror [(Juror One)] from the jury on the day of trial."

¶20 In the course of a subsequent hearing on the matter, the court concluded that it was no longer concerned with the "potentially biased juror" issue due to a recent Utah Court of Appeals' decision. The court did decide, however, to appoint conflict counsel to represent Mr. Martinez-Castellanos in post-trial proceedings regarding the motion to suppress issue. The court expressed its concern with "[w]hether or not the evidence . . . supported the continued retention of [Mr. Martinez-Castellanos] after [the trooper] determined that the vehicle was registered," and "whether there was . . . justification for having [Mr. Martinez-Castellanos] step out of the car and further perform . . . field sobriety tests" when the trooper discovered that the car was registered to Mr. Martinez-Castellanos, that Mr. Martinez-Castellanos was who he said he was, and that Mr. Martinez-Castellanos had a valid Driver license. The court was also concerned with "whether there was reasonable suspicion." The court instructed conflict counsel to address whether trial counsel's failure to file any memorandum on the motion to suppress issue constituted ineffective assistance of counsel.

¶21 About a month later, conflict counsel submitted a memorandum entitled "Amicus Brief." Conflict counsel began his brief by stating that he was acting "as a friend of the Court." He did not address the concerns the court expressed regarding the extended duration of the traffic stop in his brief, but instead addressed only whether trial counsel's failure to file the memorandum rose to a level of ineffective assistance of counsel. He laid out the two-part *Strickland* analysis for ineffective assistance of counsel and applied it in this case. Then, surprisingly, conflict counsel argued that

Mr. Martinez-Castellanos could not meet the prejudice prong of the *Strickland* test, noting that it "is difficult, if not impossible to find that [Mr. Martinez-Castellanos's counsel's] failure to file a legal memorandum could satisfy the second prong of the *Strickland* test." He concluded his brief by stating that the district court's earlier denial of the motion to suppress was sufficient to include "an implicit determination that the facts elicited at the evidentiary hearing" supported a lawful search. He therefore advised the court that its decision denying the motion had addressed the concerns it had raised. He did not advocate for a different result on Mr. Martinez-Castellanos's behalf.

¶22 The State did not file a response to conflict counsel's brief but rather concurred with the findings of conflict counsel. The trial court agreed with conflict counsel's conclusion and withdrew its notice. The court dismissed conflict counsel and reinstated trial counsel to represent Mr. Martinez-Castellanos through the rest of the proceedings. Mr. Martinez-Castellanos was subsequently sentenced to zero to five years in the Utah State Prison. The court suspended the sentences and placed him on probation.

¶23 Trial counsel then filed a timely motion for a new trial, asking the court to suppress the evidence from the traffic stop and blood draw, and noting that the trial court itself had expressed concern with this evidence. Once again, however, trial counsel failed to file a supporting memorandum. Instead, he simply attached the transcripts of the preliminary hearing, the suppression hearing, and the trooper's trial testimony. In the motion, trial counsel did argue that there was "a substantial change in the [trooper's] testimony regarding the reason for the stop and the time and delay in the stop" during these hearings. And, in light of the change in testimony, trial counsel argued that the order denying the motion to suppress "should be set aside and reconsidered." But counsel did not further flesh out this issue. The State opposed the new motion as untimely and inadequate, and the trial court denied the motion without explanation. Mr. Martinez-Castellanos thereafter timely appealed his convictions.

*The Court of Appeals' Decision*

¶24 Before the court of appeals, Mr. Martinez-Castellanos argued that trial counsel was ineffective during jury selection and in his efforts to litigate the motion to suppress. Mr. Martinez-Castellanos also argued that the trial court committed plain error in failing to provide him with competent conflict counsel to address the court's post-trial notice. A majority panel of the court

of appeals concluded that each of these three assertions identified an error, but that none of these errors alone warranted reversal.[3]

¶25 The court of appeals first reviewed trial counsel's actions during jury selection and concluded that counsel was deficient when he "fail[ed] to provide Martinez-Castellanos a meaningful opportunity to participate in the [jury selection] process—either through physical presence in chambers or at minimum through consultation afterward."[4] But it concluded that this error did not meet the prejudice prong of the *Strickland* test. The court reasoned that in order for Mr. Martinez-Castellanos to show prejudicial error under *Strickland*, he must show "that a biased juror actually sat."[5] And because it believed "the limited record in this case permits no more than speculation that a juror with actual bias may have sat in judgment," the court held that the second prong of *Strickland* could not be met.[6]

¶26 The court of appeals did note, however, that a finding of insufficient prejudice on this error was "a particularly unsatisfactory result" because it was built upon "one presumption layered on another."[7] And the court expressed further reservation in reaching this finding because "the trial judge himself had lingering concerns about at least one of the three jurors" and "the crucial events occurred without Martinez-Castellanos' involvement."[8] Nevertheless, the court "reluctantly conclude[d] that, on this record, Martinez-Castellanos cannot show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[9]

¶27 The second error the court of appeals identified was trial counsel's failure to file a memorandum in support of Mr. Martinez-Castellanos's motion to suppress. The court stated that

_____

[3] *State v. Martinez-Castellanos*, 2017 UT App 13, ¶¶ 78, 80, 389 P.3d 432.

[4] *Id.* ¶ 32.

[5] *Id.* ¶ 51 (citing *State v. King*, 2008 UT 54, ¶ 28, 190 P.3d 1283).

[6] *Id.* ¶ 58.

[7] *Id.* ¶ 60.

[8] *Id.*

[9] *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

counsel's failure to file supporting memoranda effectively deprived Mr. Martinez-Castellanos of "an effective adversarial process" and "amounted to deficient performance" under *Strickland*.[10]

¶28 The court also held that a third error occurred in Mr. Martinez-Castellanos's case—he was inadequately represented in his post-trial proceedings on the trial court's *sua sponte* notice. The court believed that conflict counsel completely failed to represent Mr. Martinez-Castellanos and, in fact, argued against him.[11] It stated that conflict counsel essentially argued in his brief that, "because the court had decided the motion against . . . Martinez-Castellanos, it must have lacked merit in the first place and, as a consequence, trial counsel's failure to file a memorandum arguing Martinez-Castellanos' position was harmless."[12] The court of appeals therefore concluded that the trial court had erred in accepting a brief that did not advocate for Mr. Martinez-Castellanos and "that the error was obvious."[13]

¶29 But the court concluded that neither the trial counsel's deficient performance with his motion to suppress, nor the trial court's failure in the post-trial proceeding, constituted reversible error because Mr. Martinez-Castellanos "has [not] demonstrated the necessary prejudice."[14] It stated that Mr. Martinez-Castellanos was required under law to prove his motion to suppress was "meritorious" and that, had he prevailed on that motion, the "verdict would have been different."[15] While Mr. Martinez-Castellanos argued on appeal that there was a "reasonable likelihood that a proper motion would have resulted in suppression of the evidence," the court declined to determine whether Mr. Martinez-Castellanos's motion would have succeeded if a competent attorney would have filed a supporting memorandum.[16] The court chose not to engage in a merits analysis on the motion because of the "absence of representation" Mr. Martinez–Castellanos

---

[10] *Id.* ¶¶ 63, 67.

[11] *Id.* ¶ 72.

[12] *Id.* ¶ 71.

[13] *Id.* ¶ 73.

[14] *Id.* ¶ 78.

[15] *Id.* ¶ 74. (citation omitted).

[16] *Id.* ¶¶ 74, 76.

received during these motion stages, and because the merits of the motion were "so poorly developed in the trial court."[17]

¶30 The court of appeals did conclude, however, that the cumulative effect of these three errors—trial counsel's deficient performance during the jury selection and the motion to suppress stages, and the trial court's failure to appoint competent conflict counsel—"seriously undermined" its "confidence that Martinez-Castellanos received a fair trial."[18] Operating under the cumulative error doctrine, the court detailed how its decisions regarding *Strickland* prejudice on each error rested on shaky ground. Particularly, the court explained that its finding of insufficient prejudice was predicated on "layered legal presumptions" and an incomplete record.[19] Because of this weak foundation, the court held that its confidence in the fairness of the trial was "significantly shaken."[20] The court therefore reversed Mr. Martinez-Castellanos's convictions and remanded the case to the trial court for a new trial with different counsel.

¶31 The State subsequently filed a writ of certiorari with this court challenging the court of appeals' cumulative error conclusion, which we granted. We have jurisdiction pursuant to section 78A-3-102(3)(a) of the Utah Code.

## Standard of Review

¶32 We granted certiorari to review one question: whether the majority of the panel of the court of appeals erred in concluding cumulative error warranted a reversal of Mr. Martinez-Castellanos's convictions. On certiorari, "we review the court of appeals' decision for correctness."[21]

## Analysis

¶33 In its decision below, the court of appeals concluded that trial counsel erred in his representation of Mr. Martinez-Castellanos during the jury selection and the motion to suppress stages of trial. It

---

[17] *Id.* ¶ 76.

[18] *Id.* ¶ 79.

[19] *Id.* ¶ 78.

[20] *Id.* ¶ 80.

[21] *State v. Rushton*, 2017 UT 21, ¶ 9, 395 P.3d 92 (citation omitted).

also concluded that the trial court erred in its dealing with conflict counsel. But the court of appeals held that none of these three errors warranted reversal on their own, because Mr. Martinez-Castellanos could not show the "necessary prejudice" required under *Strickland* or the plain error doctrine.[22] Neither party contests these determinations.[23]

¶34 The court of appeals did hold, however, that reversal was warranted under the cumulative error doctrine, a holding the State now appeals. So the only issue before us is whether the errors at trial, in combination, amount to reversible error under the cumulative error doctrine. We hold that they do not.

¶35 The cumulative error doctrine applies only to errors that could conceivably harm a party in some way. Errors with no potential for harm do not accumulate. Here, the court of appeals failed to determine whether Mr. Martinez-Castellanos's motion to suppress was meritorious. Because at least two of the three errors identified by the court of appeals could not conceivably cause harm absent such a determination, we hold that the court of appeals erred in its application of the cumulative error doctrine. We accordingly reverse the court of appeals' cumulative error determination and set forth the correct cumulative error standard.

¶36 Although we reverse the court's decision, we cannot affirm Mr. Martinez-Castellanos's convictions, because the court of appeals failed to make a determination on the merits of his motion to suppress. Instead of deciding the merits of this motion, the court skipped this step and simply relied on reversal under the cumulative error doctrine. Because a determination that Mr. Martinez-Castellanos's motion to suppress is meritorious would

---

[22] *State v. Martinez-Castellanos*, 2017 UT App 13, ¶ 78, 389 P.3d 432.

[23] On certiorari, the State concedes that the court of appeals correctly held that Mr. Martinez-Castellanos has met the first prong of the *Strickland* test (deficient performance) with regard to trial counsel's performance during the jury selection and the motion to suppress stages of trial. It also appears to concede that the trial court committed an obvious error when it accepted the brief from conflict counsel as sufficient representation. Additionally, in his briefing, Mr. Martinez-Castellanos has not asserted as an alternative ground for affirmance that any of these errors warrant reversal on their own.

render some errors reversible in this case, we remand the case to the court of appeals to make such a determination.

## I. The Court of Appeals Erred in Applying the Cumulative Error Doctrine

¶37 The court of appeals reversed Mr. Martinez-Castellanos's convictions on cumulative error grounds. It specifically concluded that while "no single error met the prejudice standard of ineffective assistance [of counsel] or plain error," when it "'consider[ed] all the identified errors, as well as any errors [it] assume[d] may have occurred,' [its] confidence in the fairness of the trial and its outcome [was] substantially undermined."[24] The State claims this was error.

¶38 On certiorari, the State argues that the court of appeals' reliance on the cumulative error doctrine in this case was misplaced because none of the errors identified by the court were the least bit prejudicial to Mr. Martinez-Castellanos. It asserts that when "an error is not prejudicial to at least some degree, then it cannot add any weight to the cumulative error scale" and so should not be considered in a court's cumulative error analysis. It also contends that, "[g]iven the nature of [Mr. Martinez-Castellanos's] claims, prejudice either existed or it did not; it was all-or-nothing." And, according to the State, the errors he has identified cannot accumulate to warrant reversal, because Mr. Martinez-Castellanos could not establish prejudice on his all-or-nothing claims. We agree in part and accordingly set forth the proper scope of the cumulative error doctrine.

¶39 "'Cumulative error' refers to a number of errors which prejudice [a] defendant's right to a fair trial."[25] It is "used when a single error may not constitute grounds for reversal, but many errors, when taken collectively," do.[26] This means that, under the doctrine, "we will reverse [a jury verdict or sentence] only if the

---

[24] *State v. Martinez-Castellanos*, 2017 UT App 13, ¶ 80, 389 P.3d 432 (citation omitted).

[25] *State v. Ellis*, 748 P.2d 188, 191 (Utah 1987) (alteration in original) (citation omitted).

[26] *State v. Perea*, 2013 UT 68, ¶ 97, 322 P.3d 624.

cumulative effect of the several errors undermines our confidence . . . that a fair trial was had."[27]

¶40  In applying this doctrine, we have stated that a court should "consider all the identified errors, as well as any errors we assume may have occurred."[28] But this does not mean that all errors accumulate for purposes of cumulative error. Rather, when conducting this analysis, we have repeatedly held that the "doctrine

---

[27] *State v. Maestas*, 2012 UT 46, ¶ 363, 299 P.3d 892 (alterations in original) (citation omitted); *see also Perea*, 2013 UT 68, ¶ 105 ("Cumulative error is applicable in those instances where the district court's collective errors rise to a level that undermine our confidence in the fairness of the proceedings."); *State v. Kohl*, 2000 UT 35, ¶ 25, 999 P.2d 7 (holding that the cumulative error doctrine will not be applied unless "the aggregation of these errors . . . result[s] in a fundamentally unfair trial").

While we have repeatedly stated that we look to the "fairness of the proceedings" or whether the defendant received a "fair trial" in our cumulative error analysis, *see, e.g., Perea*, 2013 UT 68, ¶¶ 97, 105, we have also stated that we look at whether "our confidence in the fairness of . . . [the] guilty verdict [is] . . . undermined," *State v. Jones*, 2015 UT 19, ¶ 74, 345 P.3d 1195; *see also State v. Houston*, 2015 UT 40, ¶ 111, 353 P.3d 55 ("Because we find that each of Mr. Houston's ineffective assistance of counsel claims fails, our confidence in the fairness of his sentence is not undermined. Therefore, we find no cumulative error."); *Maestas*, 2012 UT 46, ¶ 364 ("Because Mr. Maestas was not harmed by any substantial errors over the course of the proceedings, our confidence in the fairness of his guilty verdict and his sentence of death is not undermined. Thus, the cumulative error doctrine does not apply . . . ."). These standards are synonymous. A defendant is deprived a "fair trial" when there is a reasonable probability that, but for the several errors, a different verdict or sentence would have resulted. We therefore hold that reversal is warranted under the cumulative error doctrine when multiple errors undermine our confidence in the verdict. *See State v. Richardson*, 2013 UT 50, ¶ 40, 308 P.3d 526 (explaining that "[o]ur confidence in a verdict wanes when 'there is a reasonable likelihood that the verdict would have been different' but for an erroneous ruling" (citation omitted)).

[28] *State v. Dunn*, 850 P.2d 1201, 1229 (Utah 1993).

will not be applied" when "claims are found on appeal to not constitute error, or the errors are found to be so minor as to result in no harm."[29] In other words, the doctrine will only be applied to errors that are "substantial" enough to accumulate.[30]

¶41 When considering reversal under the cumulative error doctrine, therefore, not only must a court make a determination that an error exists, it must also make a separate determination that the error could conceivably cause some harm before it adds the error's effect to the cumulative error scale. This is a critical intermediate step in which a court determines whether an error, standing alone, has any potential to cause harm before considering it in combination with other errors. This step ensures that errors with no potential for harm, such as technical or otherwise nullified errors,[31] do not serve to inflate the overall number of errors we consider in favor of cumulative error. Although a trial riddled with technical errors may raise a reviewing court's suspicions, only errors that could have adversely affected a party can accumulate into reversible error.

---

[29] *See Maestas*, 2012 UT 46, ¶ 363 (citation omitted); *State v. Gonzales*, 2005 UT 72, ¶ 74, 125 P.3d 878.

[30] *Bundy v. Deland*, 763 P.2d 803, 806 (Utah 1988) (holding that "[b]ecause . . . no *substantial* errors were committed, the concept of cumulative error does not apply" (emphasis added)); *Ellis*, 748 P.2d at 191 (same); *Ivie v. Richardson*, 336 P.2d 781, 787 (Utah 1959) ("We expressly do not mean to say that trivia which would be innocuous in themselves can be added together to make sufficient error to result in prejudice and reversal. The errors must be real and *substantial* and such as may reasonably be supposed would affect the result." (emphasis added)).

[31] A nullified error occurs when an error is rendered a nullity because there exists an alternative basis for upholding the same result the error produced. For example, a trial judge may erroneously exclude evidence as irrelevant under rule 402 of the Utah Rules of Evidence. But this error becomes nullified, or without effect, when it is clear on review that the evidence would have been excluded anyway under rule 403. Although technically an error, the trial court's mistake poses no danger of harm because the evidence in question would have been excluded on alternative grounds. In other words, the result would have been the same whether the trial court erred or not.

¶42 In sum, a court must make three determinations before reversing a verdict or sentence under the cumulative error doctrine: it must determine that (1) an error occurred, (2) the error, standing alone, has a conceivable potential for harm, and (3) the cumulative effect of all the potentially harmful errors undermines its confidence in the outcome.[32] If the court determines that either a party's claim did not amount to an error, or that the claim was an error but has no potential to cause harm on its own, the claim cannot weigh in favor of reversal under the cumulative effects test. The court of appeals failed to follow this test.

¶43 Here, the court of appeals weighed errors with no potential to cause harm on their own in favor of reversal. The court of appeals held that Mr. Martinez-Castellanos's trial counsel rendered deficient

---

[32] While similar in some respects, this analysis differs from the reversible error and ineffective assistance of counsel standards, which require a court to conclude (1) that an error occurred and (2) that the error undermines its confidence in the outcome. In order to establish reversible error, a court must determine that (1) an error exists, and (2) the error was harmful—i.e., "there is a reasonable likelihood that, absent the error, there would have been a result more favorable to the complaining party." *Tingey v. Christensen*, 1999 UT 68, ¶ 16, 987 P.2d 588 (citation omitted). Similarly, in order to establish ineffective assistance of counsel, a court must conclude that (1) "that counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense"—i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). The second prong in both standards ultimately focuses on whether the court's confidence in the outcome of the proceeding is undermined. *See Richardson*, 2013 UT 50, ¶ 40 (holding that an error "will require reversal only if [our] confidence in the jury's verdict is undermined" (alteration in original) (citation omitted)); *Strickland*, 466 U.S. at 694 (holding that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome"). While an argument can be made that the same intermediate step set forth in the cumulative error standard is implicit in these standards, this step is particularly important in the cumulative error context because it prevents the court from giving weight to an error that has no conceivable effect on the outcome.

performance in failing to file a memorandum in support of his motion to suppress.[33] It also held that the trial court plainly erred in accepting conflict counsel's "Amicus Brief that did not advocate for [Mr. Martinez-Castellanos]."[34] But it ultimately determined that these errors did not warrant reversal on their own, because Mr. Martinez-Castellanos failed to "demonstrate[] the necessary prejudice to be entitled to relief on the grounds of ineffective assistance of counsel or plain error."[35]

¶44 It appears the court determined that Mr. Martinez-Castellanos could not show the requisite prejudice on these errors, because it was uncertain whether his motion to suppress was "meritorious"—a requirement a defendant must prove before he can establish "actual prejudice" on an ineffective assistance of counsel claim concerning the Fourth Amendment.[36] Instead of determining whether Mr. Martinez-Castellanos's motion was meritorious, the court stated that his trial counsel's error during the motion stage, as well as the trial court's error during the post-trial review of the motion stage, potentially left "unexplored developments" before the trial court and so left a "poorly developed" record on this issue.[37] These "serious concerns" led the court to determine that the motion was "plausible" and to weigh the cumulative effect of these errors in favor of cumulative error.[38] This was a mistake.

¶45 Trial counsel's error during the motion stage—his failure to file a memorandum in support of the motion to suppress—was improperly considered by the court in its cumulative error

---

[33] *Martinez-Castellanos*, 2017 UT App 13, ¶ 67.

[34] *Id.* ¶ 73.

[35] *Id.* ¶ 78.

[36] *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) ("Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.").

[37] *Martinez-Castellanos*, 2017 UT App 13, ¶ 76.

[38] *Id.* ¶¶ 76, 78.

determination because this error, without a determination that the motion is meritorious, cannot conceivably cause harm. A trial counsel's failure to file a memorandum in support of motion to suppress can only cause harm to a defendant when the motion would have been successful had the memorandum been filed. Otherwise, the failure to file a memorandum would have no effect on the defendant, as the failure would lead to the same result—an unsuccessful motion and the admission of the evidence at issue. Here, the court of appeals declined to determine whether, absent his trial counsel's error, Mr. Martinez-Castellanos's motion to suppress would have been meritorious. Because the court did not make this finding, we cannot say that this error had any conceivable effect on Mr. Martinez-Castellanos. So the court of appeals erred in considering this error as part of its cumulative error determination.

¶46 Similarly, in making its cumulative error determination, the court of appeals incorrectly accumulated the trial court's error in accepting conflict counsel's briefing. The trial court's error here turns on whether trial counsel's deficient performance during the motion stage prejudiced Mr. Martinez-Castellanos. In fact, that was exactly what conflict counsel was instructed to evaluate by the trial court. But the lack of representation by conflict counsel in the post-trial hearings could have no effect on Mr. Martinez-Castellanos if his motion to suppress was meritless. If his motion could not have succeeded below, regardless of whether a memorandum in support was filed, then his trial counsel's deficient performance at the motion stage caused no harm. So the trial court's decision to accept conflict counsel's argument also could not cause harm, because the motion would not have succeeded either way. In other words, without a determination that the motion to suppress was successful, the trial court's error could not conceivably have affected Mr. Martinez-Castellanos, because nothing would have changed had the error not occurred—the traffic stop and blood draw evidence still would have been admitted.

¶47 Because, without a meritorious determination, we cannot say that his trial counsel's error during the motion stage, or the trial court's error during the post-trial stage, had any conceivable effect on Mr. Martinez-Castellanos, we also cannot say these errors are

"substantial" enough to accumulate.[39] So the court of appeals incorrectly weighed these errors in favor of cumulative error.

¶48 That leaves us with the last error the court weighed in favor of cumulative error—trial counsel's deficient performance during jury selection. The State contends that this error, like the two mentioned above, should not be included in the court's cumulative error determination, because trial counsel's performance during jury selection had zero prejudicial effect on Mr. Martinez-Castellanos. Specifically, it contends that because Mr. Martinez-Castellanos failed to show that an actually biased juror sat on the jury as a result of his counsel's error—a requirement to meet *Strickland* prejudice[40]—he cannot show that any conceivable harm came from this error. We do not need to reach the question of whether this error is accumulable, however, because we have concluded that, without a determination that the motion is meritorious, the other errors identified by the court of appeals had no potential to cause harm and so could not accumulate under the cumulative error doctrine. This means that even if trial counsel's deficient performance during jury selection potentially caused some harm to Mr. Martinez-Castellanos, and so was accumulable under the doctrine, we would be left with only one accumulable error for review. And a single accumulable error cannot warrant reversal under the cumulative error doctrine.[41]

---

[39] *See Maestas*, 2012 UT 46, ¶ 364; *see also Gonzales*, 2005 UT 72, ¶ 74.

[40] *See State v. Sessions*, 2014 UT 44, ¶ 31, 342 P.3d 738 (holding that when considering ineffective assistance of counsel claims involving jury selection, "prejudice is defined in terms of proof of 'actual juror bias'" (citation omitted)); *State v. King*, 2008 UT 54, ¶ 47, 190 P.3d 1283 ("In order to prevail on [a] claim of ineffective assistance of counsel, [a defendant] must show that his counsel's actions prejudiced him because those actions allowed the seating of an actually biased juror.").

[41] *Dunn*, 850 P.2d at 1229 (The cumulative error doctrine is applicable only where "the cumulative effect of . . . *several* errors undermines our confidence . . . that a fair trial was had." (alteration in original) (emphasis added) (citation omitted)); *Conocophillips Co. v. Utah Dep't of Transp.*, 2017 UT App 68, ¶ 32, 397 P.3d 772 ("[T]he cumulative-error doctrine has no application when only a single error has been determined or assumed on appeal.").

¶49 Accordingly, we reverse the court of appeals' cumulative error determination. But we cannot uphold Mr. Martinez-Castellanos's convictions because the court of appeals failed to determine whether his motion to suppress would have been meritorious.[42]

---

[42] In the alternative, Mr. Martinez-Castellanos argues that we may presume prejudice for each of these errors under *United States v. Cronic*, 466 U.S. 648 (1984), and so we should affirm on this basis. The State argues, however, that we should not address these alternative arguments because he failed to present these arguments before the court of appeals. For support, the State relies on several cases including *DeBry v. Noble*, where we held that "[i]ssues not raised in the court of appeals may not be raised on certiorari unless the issue arose for the first time out of the court of appeals' decision." 889 P.2d 428, 444 (Utah 1995). But Mr. Martinez-Castellanos disagrees. He asserts that we "may affirm on any basis apparent on the record," and he relies on *Bailey v. Bayles*, where we held that "an appellate court may affirm the judgment appealed from 'if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court.'" 2002 UT 58, ¶ 10, 52 P.3d 1158 (citation omitted).

The parties (and the cases they rely upon) present us with an important question that has not been squarely answered by this court—whether this court may affirm a decision of the court of appeals (which, reverses—as opposed to affirms as in *Bailey v. Bayles*—a district court's decision) on a ground that was not argued below when such ground is apparent on the record. We also acknowledge that there is a question of whether we would even have jurisdiction to review Mr. Martinez-Castellanos's alternative arguments in the first instance since this case involves second degree felonies, with respect to which the court of appeals has original appellate jurisdiction. *See* UTAH CODE § 78A-4-103(2)(e). But we decline to answer these questions now, because even if we could affirm the court of appeals' decision here on any ground apparent on the record, we cannot say the alternative grounds Mr. Martinez-Castellano raises are apparent on the record. This is so because neither the Supreme Court, nor this court, has decided whether jury

(Continued)

## II. The Court of Appeals Erred in Failing to Determine Whether the Motion to Suppress Was Meritorious

¶50 As stated above, the court of appeals failed to determine whether Mr. Martinez-Castellanos's motion to suppress the traffic stop and blood draw evidence was meritorious.[43] Instead of addressing this issue, the court avoided making the determination by relying on the cumulative error doctrine for reversal. This was error.

¶51 It is well established that "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious . . . in order to demonstrate actual prejudice."[44] So in order for a defendant to bring a successful ineffective assistance of counsel claim in this context, he must show that his counsel rendered deficient performance, that his Fourth Amendment claim is meritorious, and that, but for trial counsel's deficient performance, there is a reasonable probability that the verdict would have been different.[45]

¶52 In its opinion below, the court of appeals acknowledged that "[o]rdinarily, Martinez-Castellanos would also need to 'prove that

---

selection, a pre-trial motion to suppress evidence, or a district court's sua sponte notice considering a new trial during post-trial procedures constitutes a critical stage of the proceedings. *See Cronic*, 466 U.S. at 659 n.25 ("The [United States Supreme] Court has uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding."); *Maestas*, 2012 UT 46, ¶ 57, 299 P.3d 892 (holding that prejudice will be presumed "where assistance of counsel has been denied . . . during a critical stage of the proceeding" and that "[a] critical stage is 'a step of a criminal proceeding . . . that h[olds] significant consequences for the accused'" (third and fourth alterations in original) (emphasis omitted) (citations omitted)). Without such a determination, the arguments Mr. Martinez-Castellanos asserts cannot be "apparent on the record." So we do not address his alternative arguments.

[43] *State v. Martinez-Castellanos*, 2017 UT App 13, ¶¶ 74–76, 389 P.3d 432.

[44] *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

[45] *Id.*

his Fourth Amendment claim is meritorious'" to succeed on his ineffective assistance of counsel claim.[46] But the court chose to not to make this determination, because the court was concerned that "the representation [he] received during the motion to suppress" caused his motion to be "poorly developed in the trial court" and left "potentially . . . unexplored developments during the trial itself."[47] Because of these "serious concerns," the court avoided the meritorious determination and relied instead on the cumulative error doctrine.[48] It concluded that the Mr. Martinez-Castellanos had presented a "plausible motion to suppress" and that his trial counsel's deficient performance in arguing the motion, along with the other errors, warranted reversal.[49] This was error.

¶53 The court of appeals should have determined whether Mr. Martinez-Castellanos's motion to suppress was meritorious. Both parties adequately briefed this matter before the court, and such a determination was critical to the overall outcome of the case.[50] It is clear that if his motion to suppress would have been successful had it been properly argued before the trial court, then Mr. Martinez-Castellanos would have succeeded on his ineffective assistance of counsel claim. His motion sought to exclude all evidence from the traffic stop and blood test—including any evidence of weapons, drugs, drug paraphilia, or use of drugs. So, had his motion been successful, this evidence would not have been admitted and the State would have been left with no physical evidence to support its charges. This would not only have created a reasonable probability that the verdict in this case would have been different—it would have created a certainty of a different result.

¶54 Accordingly, we remand this case to the court of appeals to determine whether Mr. Martinez-Castellanos's motion to suppress was meritorious.

---

[46] *Martinez-Castellanos*, 2017 UT App 13, ¶ 74 (citation omitted).

[47] *Id.* ¶ 76.

[48] *Id.* ¶ 78.

[49] *Id.* ¶¶ 76, 80.

[50] In contrast, neither party has briefed the merits of the Mr. Martinez-Castellanos's motion to suppress before our court, nor was this issue fairly presented in our grant of certiorari.

**Conclusion**

¶55 The court of appeals erred in accumulating errors that, standing alone, had no potential to cause harm. Without a determination that the motion to suppress is meritorious, trial counsel's deficient performance during the motion stage, and the trial court's error in its dealing with conflict counsel, cannot conceivably affect Mr. Martinez-Castellanos and so are not accumulable under the cumulative error doctrine. Thus, we reverse the court of appeals' determination of cumulative error. But because the court of appeals did not make a meritorious determination on the motion to suppress, we cannot uphold Mr. Martinez-Castellanos's convictions. Accordingly, we reverse and remand for the court of appeals to make this determination.

———————