**2014 UT App 192**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellee,
*v.*
CHRISTOPHER B. DOUTRE,
Defendant and Appellant.

Opinion
No. 20120944-CA
Filed August 14, 2014

Second District Court, Ogden Department
The Honorable Ernest W. Jones
No. 121900279

Samuel P. Newton, Attorney for Appellant

Sean D. Reyes, Daniel W. Boyer, and Michelle I.
Young, Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which SENIOR
JUDGES RUSSELL W. BENCH and PAMELA T. GREENWOOD
concurred.[1]

ORME, Judge:

¶1     Defendant Christopher B. Doutre was convicted of
attempted kidnapping, a first degree felony. He appeals that
conviction, primarily arguing that the trial court improperly
discouraged him from attending a jury view and that his trial

---

1. The Honorable Russell W. Bench and the Honorable Pamela T.
Greenwood, Senior Judges, sat by special assignment as authorized
by law. *See generally* Utah Code Jud. Admin. R. 11-201(6).

counsel was ineffective for failing to object to the testimony of the State's expert witness. We reverse and remand.

## BACKGROUND[2]

¶2     Making use of a few inches of late January snow before it melted, three girls went sledding on a small hill in an undeveloped lot in their Ogden neighborhood. One girl separated from the other two girls and began walking toward a nearby house where her mother was visiting with a friend. The girl testified that at some point she fell through the ice that had formed at the bottom of the hill and got stuck in the mud. She recounted that a man she had never met approached her from behind and grabbed her hand. She testified that he told her that her mother was by his truck, but she knew her mother was in the nearby house.

¶3     The other girls began yelling, and, according to their testimonies, the man fled. Based on the girls' descriptions of the truck and the clothes the man was wearing, police were able to find and arrest Defendant at his nearby apartment.

¶4     Defendant did not testify at trial, but Defendant's girlfriend testified that Defendant told her that he was leaving the apartment to get cigarettes. She told police that Defendant said that he saw a girl fall and walked over to see if she needed help. A police officer also testified that Defendant stated that he went out of his apartment for a smoke and talked to the girl, but that he only told her that her friends were calling her and that she should go with them.

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Bluff*, 2002 UT 66, ¶ 2, 52 P.3d 1210 (citations and internal quotation marks omitted).

¶5     During trial, the State requested that the jury be allowed to visit the sledding area in person. Defendant did not object to the proposed jury view, but jail policy required that law enforcement officers would need to restrain and escort Defendant during the visit. Both the trial court and Defendant's trial counsel were concerned about the prejudicial effect this might have in the minds of the jurors, and they engaged in an extended discussion about how to properly conduct the jury view. During this discussion, the trial court asked Defendant's counsel why she wanted him to attend the jury view at all, considering the high risk of unfair prejudice. She replied, "I don't want, but he may. That's his choice." Defendant then volunteered, "I won't go, Your Honor." The trial court did not immediately accept Defendant's offer, emphasizing that it did not want to "force [Defendant] one way or the other," and encouraged Defendant to discuss the matter with his attorney. Defendant ultimately did not attend the jury view. Defendant's counsel was present during the jury view and did not raise any objections to the way in which it was conducted.

¶6     Back in the courtroom, the jury heard from several witnesses, including Detective Glenn Buss, one of the investigating police officers. The jury had already met Buss because he was appointed by the court to guide the jury during the jury view earlier that day. In addition to testifying about his investigation in general, the State used Buss as an expert witness to testify about what appeared to be evidence of footprints left in the snow. Buss claimed to have found footprints in the melting snow five days after the attempted kidnapping that he identified in court as coming from an adult wearing shoes and running—or at least striding—down the hill. He agreed with the State that the footprints "were consistent" with the girls' story.

¶7     After hearing all the evidence, the jury convicted Defendant of attempted kidnapping. He appeals.

ISSUES AND STANDARDS OF REVIEW

¶8     Defendant first argues that he was unlawfully deprived of his right to attend the jury view during his trial. Defendant contends that his trial counsel was ineffective for failing to object to conducting the jury view in Defendant's absence and that the trial court plainly erred in its handling of the matter. A claim of ineffective assistance of counsel raised for the first time on appeal presents a question of law. *State v. Alfatlawi*, 2006 UT App 511, ¶ 11, 153 P.3d 804. Normally, a claim of plain error requires a showing that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

¶9     Defendant also asserts that his trial counsel was ineffective for failing to object to the State's expert witness on the grounds that the expert lacked proper qualifications and that his testimony violated rule 702 of the Utah Rules of Evidence. Whether Defendant's counsel was ineffective in this regard presents a question of law. *See Alfatlawi*, 2006 UT App 511, ¶ 11.

ANALYSIS

I. Jury View

¶10    While they may be rare, jury views of crime scenes are explicitly authorized under the Utah Rules of Criminal Procedure. *See* Utah R. Crim. P. 17(j) ("When in the opinion of the court it is proper for the jury to view the place in which the offense is alleged to have been committed . . . it may order them to be conducted . . . to the place, which shall be shown to them by some person appointed by the court for that purpose."). Generally, a criminal defendant has a constitutional right to be present during all phases of his or her trial, *see* Utah Const. art. I, § 12; *State v. Hubbard*, 2002 UT 45, ¶ 33, 48 P.3d 953, although it is not clear whether a simple jury view, where no evidence is admitted and no testimony is

given, merits the same protections, *see State v. Scott*, 541 P.2d 810, 810 (Utah 1975) (noting that jury views are discretionary and that nothing in Utah law "gives the defendant or counsel any right or even privilege to be included in the" jury view). *See also Snyder v. Massachusetts*, 291 U.S. 97, 108–22 (1934) (holding that the "Fourteenth Amendment does not assure to a defendant the privilege to be present" at a jury view where no words are spoken because "[t]here is nothing he could do if he were there, and almost nothing he could gain," but in all other circumstances "the justice or injustice of [excluding the defendant] must be determined in the light of the whole record"), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). But even assuming, arguendo, that Defendant did have a constitutional right to attend the jury's visit to the crime scene, this right can be validly waived. "[F]ailure by a criminal defendant to invoke his right to be present . . . constitutes a valid waiver of that right." *United States v. Gagnon*, 470 U.S. 522, 529 (1985) (dealing with a defendant's right to be present pursuant to rule 43 of the Federal Rules of Criminal Procedure). The same principle applies here, and we conclude that whatever right Defendant may have had to attend the jury view was waived when he voluntarily stated that he wished to stay behind.[3]

¶11    Defendant knew the jury view was going to take place. The trial court and trial counsel discussed several options to ensure that

---

3. The State argues that this was also invited error on the part of Defendant's trial counsel. *See generally State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993) (explaining that the invited error doctrine prevents a party from taking "advantage of an error committed at trial when that party led the trial court into committing the error"). If there was any error involved with the jury view itself, then it is quite possible that trial counsel invited it by agreeing to the conditions of the jury view, attending the jury view, and then opting not to object to anything that occurred during the jury view. However, because we determine that Defendant waived whatever rights he may have had in that regard, we do not address the issue of invited error.

Defendant would be able to attend the jury view in a way that minimized, as much as possible, any prejudice. Defendant not only failed to assert any right to attend the jury view, but he affirmatively volunteered to stay behind. Under the circumstances, we must conclude that his waiver was knowing and voluntary. Thus, he cannot now claim plain error on the part of the trial court for its acceptance of his valid waiver.

¶12    Furthermore, we conclude that Defendant's trial counsel was not deficient for failing to insist, against her client's clearly stated wishes, that he attend the jury view. To demonstrate ineffective assistance of counsel, Defendant must show that his trial counsel's "representation fell below an objective standard of reasonableness," *see Strickland v. Washington*, 466 U.S. 668, 688 (1984), and that he was prejudiced thereby, *see id*. at 687. If the "defendant has failed to prove that his counsel had no conceivable tactical basis for his actions," then we will not consider trial counsel's representation to be constitutionally deficient. *See State v. Clark*, 2004 UT 25, ¶ 7, 89 P.3d 162 (internal quotation marks omitted).

¶13    In this case, we can readily conceive of tactical and otherwise reasonable bases for trial counsel's decisions. To begin with, trial counsel may have wisely concluded that the danger of the jury catching even a glimpse of Defendant being shackled and escorted like an already-convicted prisoner overwhelmed the scant benefit of his being present but silent at the jury view. Even if there was some imaginable way for Defendant to attend the jury view without visible restraints, Defendant's trial counsel may also have been worried about how his body language at the scene could be construed or misconstrued by attentive jurors. And she may well have felt that she would be better able to keep an eye on the jurors and their police escort if she was not also monitoring Defendant and fielding his questions or comments. Finally, trial counsel, like the trial court, may have accepted Defendant's knowing and voluntary waiver as sincere and sensible and therefore elected not to raise an objection out of a desire to "advance the legitimate

interests of" her client. *See* Utah Standards of Professionalism & Civility 1. Because there is a conceivable tactical basis for trial counsel's actions, we conclude that she was not ineffective in this regard.

## II. Expert Testimony

¶14 Defendant next points to a number of problems with Detective Buss testifying as an expert witness and asserts that his trial counsel's failure to properly object constituted ineffective assistance of counsel. Again, to prevail on a claim of ineffective assistance of counsel, a defendant must show, first, that trial counsel's "representation fell below an objective standard of reasonableness," *Strickland v. Washington*, 466 U.S. 668, 688 (1984), and second, that the defendant was prejudiced thereby, *id*. at 687. We conclude that Defendant's trial counsel was ineffective in failing to object to Buss's testimony and that this failure prejudiced Defendant.

### A. Ineffectiveness

¶15 On appeal, Defendant directs our attention to a number of problems with Detective Buss's testimony: (1) Buss participated in the jury view as the jury's escort and narrator before being called as a witness,[4] (2) the State did not provide the required prior notice that Buss was going to give expert testimony, (3) Buss was not qualified to give expert testimony and his methods were unreliable, and (4) Buss's testimony improperly vouched for the credibility of other witnesses.

¶16 First, it was significant that Buss was a witness and that on the day he testified, he also served as the court-appointed guide for

---

4. While Defendant primarily challenges this aspect of the trial as part of his comprehensive attack on the jury view, it more logically fits as part of his challenge to trial counsel's handling of Buss's testimony.

the jury view. While we have already determined that Defendant waived his right to attend the jury view and that the jury view appears to have been conducted in an otherwise unobjectionable manner, trial counsel should have been sensitive to the impression this unusual situation might have made on the jury. Even when a defendant has waived his right to attend a jury view, there should not be "permitted any irregularity . . . [that] might tend to influence the trier of fact." *Jones v. Commonwealth*, 317 S.E.2d 482, 485 (Va. 1984).[5] This certainly seems to be such an irregularity, particularly because the trial court told the jury that "[n]one of the witnesses are going to be" at the jury view. Buss was, however, permitted to be at the jury view, and was the only witness so privileged.

¶17    The State asked Buss during direct examination, "[I]s visibility different today than it was on February 1st?" Buss was allowed to answer this question by referencing how things appeared at the scene earlier that day during the jury view. He then explained the location of events that supported the State's theory of the case, even though he had served as the court-appointed guide who was supposed to impartially point out landmarks for the benefit of the jurors during the jury view. All of this had the probable effect of bolstering his credibility. Considering the potential for confusion that his dual roles presented, trial counsel should have objected to Buss's testimony on those grounds.[6]

¶18    Second, the State failed to give Defendant notice that it was going to call an expert witness, as required by Utah Code section 77-17-13. *See* Utah Code Ann. § 77-17-13(1)(a) (LexisNexis 2012)

---

5. We cite *Jones v. Commonwealth*, 317 S.E.2d 482 (Va. 1984), only because it articulates a common-sense principle and not because we have determined that trial counsel must be aware of, and adhere to, the jurisprudence of other jurisdictions.

6. Alternatively, trial counsel should have objected to Buss's serving as the jury's escort and narrator during the jury view.

(requiring any party intending to use an expert witness in a felony case to give "notice to the opposing party as soon as practicable but not less than 30 days before trial or 10 days before the hearing"). The State argues that because Buss is an employee of a political subdivision of the state, it should not be held to the thirty-day notice requirement in subsection (1)(a), but instead should be required only to give "reasonable notice" and make its witness "available to cooperatively consult" with Defendant. *See id.* § 77-17-13(6). The notice exception for an expert witness who is a state employee, contained in subsection (6), most likely refers to an expert witness who is testifying in his or her official role as a government employee and not merely a government employee who also happens to be an expert on a subject outside the scope of his or her official work, as is the case here.[7] But even if subsection (6) applies to Buss, such that the thirty-day notice requirement does not apply, the State failed to give even reasonable notice and did not make Buss available to Defendant to cooperatively consult, as is required by the rule. In fact, the State did not give Defendant a witness list until three business days before the trial. This was not a reasonable amount of time for Defendant to cooperatively consult with Buss or to call a rebuttal expert witness. Trial counsel should have objected to Buss's testimony for lack of notice and asked for a continuance or another appropriate remedy. *See id*. § 77-17-13(4).

¶19    Third, Buss's testimony did not meet the threshold requirements for expert testimony under rule 702 of the Utah Rules of Evidence. Trial judges are required by rule 702 to "screen out unreliable expert testimony." Utah R. Evid. 702 advisory committee note. Specialized knowledge, such as tracking, can be the basis of

---

7. Buss's work as an Ogden City police detective entailed investigation primarily of cases involving domestic violence or children. His expertise in tracking was not acquired in the discharge of these responsibilities but as a volunteer member of the Utah County Sheriff's Office Search and Rescue team. Ogden, of course, is in Weber County, not Utah County.

expert testimony only if there is a threshold showing that the principles or methods that are underlying the testimony (1) are reliable, (2) are based on sufficient facts, and (3) have been reliably applied to the facts. *See* Utah R. Evid. 702(b). In this case, Buss testified that he was a four-year veteran of the Utah County Sheriff's Office Search and Rescue team and had training in tracking people. While he did not say that he had actual experience with tracking people, the trial court seems, at first blush, to have concluded that Buss had made a "basic foundational showing" of reliability for his testimony to be admissible. *See id.* R. 702 advisory committee note. However, when Buss began to testify, it should have been immediately apparent to trial counsel that the principles and methods underlying his testimony were not (1) reliable, (2) based on sufficient facts or data, or (3) reliably applied to the facts of the case. *See id.* R. 702(b).

¶20    Buss testified that he visited the scene five days after the alleged crime and identified marks in the snow as footprints. He said the footprints were several days old, that they were made by an adult going downhill, and that it was something more than a "casual walk." During cross-examination, Buss insisted that the footprints could not have been made by a large child wearing boots—as opposed to an adult wearing tennis shoes as he claimed—because he "compared it relative to [his] size shoe and the pattern was not a sliding pattern." This testimony seems to push the limits of Buss's questionable qualification as a tracking expert. Additionally, the fact that Buss did not examine the unsecured scene until several days later, after others could have walked through the snow, and after the sun had melted the snow completely from some areas of the hill, draws into question the sufficiency of the facts on which Buss based his opinion and the reliability of his methods as applied to those facts.

¶21    The State argues that it was a reasonable trial strategy to address these rule 702 defects during cross-examination and notes that the United States Supreme Court has held that in "many instances cross-examination will be sufficient to expose defects in

an expert's presentation." *Harrington v. Richter*, 131 S. Ct. 770, 791 (2011). While it is true that exposing the defects in an expert's testimony during cross-examination can be a sound strategy in some cases, we cannot conceive of a sound basis for failing to object on rule 702 grounds in this case when it should have been obvious, before the bulk of Buss's testimony was given, that it lacked the threshold reliability required by rule 702. Accordingly, even if the trial court would not have sustained the objection on notice grounds that diligent trial counsel should have interposed, trial counsel was remiss for not objecting to Buss's testimony on the grounds of unreliability.

¶22    Fourth, and finally, Defendant claims that Buss improperly vouched for the veracity of the girls' testimony and that his trial counsel was ineffective for failing to object to that aspect of his testimony. In general, rule 608 of the Utah Rules of Evidence does not allow a witness to bolster the testimony of another witness based on specific incidents or to offer general opinions about credibility when the other witness's reputation for truthfulness has not been attacked. *See* Utah R. Evid. 608. Indeed, "insofar as the expert testimony may be characterized as 'bolstering' or 'vouching' for the testimony of the child witness's credibility regarding a particular event, it [is] clearly impermissible." *State v. Hoyt*, 806 P.2d 204, 211 (Utah Ct. App. 1991). In the instant case, the State asked Buss, "[W]as the terrain that you observed and the prints that you observed consistent with what was being told to you by the girls?" He responded, "They were." While Buss could testify about his analysis of the footprint evidence and his investigation, the final inferential step of determining the consistency of the evidence presented with the testimony of particular witnesses is rightly the province of the jury. This is an important distinction "designed to prevent the fact-finder from exchanging common sense for reliance on the imprimatur of a titled and learned expert witness." *Id*.

¶23    We can conceive, however, of a reasonable tactical basis for trial counsel's decision to forgo an objection to the State's question.

*See State v. Clark*, 2004 UT 25, ¶ 7, 89 P.3d 162. For instance, trial counsel may have considered Buss's intrusion into the jury's domain as minimal and ultimately harmless considering the entirety of his testimony. Therefore, she may have wisely surmised that objecting to the question might only underline the assertion instead of dispelling it in the minds of the jurors. *See State v. Ott*, 2010 UT 1, ¶ 39, 247 P.3d 354 ("[A]voidance of drawing the jury's attention to certain facts or over-emphasizing aspects of the facts is a well recognized trial strategy."). Thus, we cannot conclude that Defendant's trial counsel was ineffective for failing to object to this part of Buss's testimony.

¶24    Given the foregoing problems with Buss's testimony, trial counsel should have raised any available non-futile objections or pursued some other reasonable alternative to keep the evidence out. Instead, trial counsel failed to object to the irregularity of Buss acting as both a guide during the jury view and the State's witness on the same day of trial. Trial counsel failed to object to the State's lack of notice of its intent to call Buss as an expert witness and thereby lost the opportunity to prepare for his testimony. And, perhaps because of the lack of adequate preparation to meet Buss's expert testimony, trial counsel failed to grasp the problems with the testimony and to object to it as unreliable under rule 702. If clearly inadmissable evidence has no conceivable benefit to a defendant, the failure to object to it on nonfrivolous grounds cannot ordinarily be considered a reasonable trial strategy. *See id.* ¶ 38. We conclude that, with the one exception noted, these objections would have been well taken, and we can conceive of no reasonable alternative to raising them. We therefore conclude that trial counsel's performance was deficient in this regard.

B.    Prejudice

¶25    Next, we consider whether trial counsel's ineffective assistance harmed Defendant in a way that undermines our confidence in the verdict. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Defendant argues that the jury's verdict hinged on

whether the jury believed the girls' accounts—that Defendant ran down the hill, attempted to kidnap the girl, and then ran away in a different direction—or Defendant's explanation—that he saw a girl fall in the mud, walked a few feet over to help her, and then left. Indeed, the photographs of the footprints and Buss's interpretation of those footprints were the only nonwitness evidence presented at trial that supported the State's version of the story over Defendant's version. And this was a significant aspect of the State's case.

¶26    During closing arguments, the State emphasized the importance of the footprint evidence. Referring to one of the photographs Buss took, the prosecutor said, "[A]s we see in [the photograph] that's been shown to you previously, he ran as they approached. He ran away . . . and escaped that way." The State also acknowledged some of the problems with the girls' accounts. "When we're dealing with young girls, it's important—or young kids of any age, it's important . . . that you look at everything if what they're telling you makes sense. And you look for consistency in the statements." Defendant's trial counsel, during her closing argument, pointed out a number of inconsistencies in the girls' stories. On rebuttal, the State emphasized the importance of Buss's testimony as it related to the credibility of the girls. "[A]gain, when you deal with little kids that's not going to be the most reliable. So what did [Buss] do? He took them to the scene . . . . That's how we get corroboration . . . ." The State continued:

> You heard about [Buss] testifying about those footprints. I think that is critical because the footprints go one way. They don't return, and that again corroborates what the girls said; that he didn't go back the same way that he came from. There's one set of adult-sized footprints, just coincidently through the same area that the girls said he came. What the officer is looking for is corroboration. . . . And you heard him say that yes, everything that he

observed at the scene was consistent with what the girls told him.

> And he also said that visibility was much different . . . than it is today. You saw the pictures where you could see people at the top of the hill because there are no leaves. Today I agree the visibility is not good at all because of the leaves, but you heard Officer Buss say it was much different, and you see evidence of that in those photographs. . . .

> When we put it into context, these girls were consistent. . . . [Y]ou heard from all of them, and you heard corroboration from Officer Buss that he ran away from this.

> We have no better indicator of guilt than someone's actions after they're confronted . . . .

¶27 Based on the foregoing, we readily conclude that the State relied heavily on Buss's testimony. If Defendant's trial counsel had objected to its admissibility, or at least moved for a continuance to better prepare to refute the testimony, then there would have been a reasonable likelihood of a more favorable outcome for Defendant.

CONCLUSION

¶28 Defendant waived whatever right he may have had to attend the jury view when he volunteered in open court to stay behind. His trial counsel was not ineffective for respecting her client's legitimate wishes in this regard, nor was the trial court in error for accepting Defendant's waiver.

¶29 Buss's expert testimony and trial counsel's response to that testimony were problematic for a number of reasons. Trial counsel was deficient for failing to object to the irregularity of Buss acting both as the court-appointed guide during the jury view and as a witness for the State once back at the courthouse. Trial counsel was

also deficient for failing to object to the State's failure to give reasonable prior notice of Buss's expert testimony. And trial counsel should have objected to Buss's testimony as unreliable under rule 702 of the Utah Rules of Evidence. Because the State relied so heavily on Buss's testimony, we conclude that trial counsel's deficient performance harmed Defendant, and our confidence in the verdict is undermined. Accordingly, we reverse Defendant's conviction and remand for a new trial or such other proceedings as may now be appropriate.

---