**2020 UT App 15**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ISRAEL LOPEZ-GONZALEZ,
Appellant.

Opinion
No. 20180633-CA
Filed January 24, 2020

Second District Court, Ogden Department
The Honorable Jennifer L. Valencia
No. 171901740

Samuel A. Goble and Erin E. Byington, Attorneys
for Appellant

Sean D. Reyes and Tera J. Peterson, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Opinion, in which
JUDGES GREGORY K. ORME and MICHELE M. CHRISTIANSEN
FORSTER concurred.

POHLMAN, Judge:

¶1     Israel Lopez-Gonzalez confessed to a detective and then
testified at trial that he took actions against the victim (Victim) to
"teach him a lesson" after Victim shortchanged him. Lopez-
Gonzalez admitted that he struck and hurt Victim with a
handgun, told Victim that he "wasn't going anywhere," took
Victim's clothing, fired a shot into the ground, and abandoned
Victim on a dirt road. These admissions confirmed many of the
same facts that other witnesses testified to at trial. A jury
convicted Lopez-Gonzalez of aggravated kidnapping,
aggravated robbery, and aggravated assault. He appeals, raising
several claims of ineffective assistance of counsel. We affirm.

BACKGROUND[1]

¶2 In June 2017, Lopez-Gonzalez lent money to a woman (Wife) for her husband's (Husband) bail. Lopez-Gonzalez agreed to the loan because Husband used to sell him marijuana. Wife, Lopez-Gonzalez, and another friend (Friend) went together and bailed Husband out of jail in Brigham City, Utah. After Husband's release, the group decided to buy methamphetamine in Ogden, Utah. Once there, they met up with Victim, who had a contact for buying drugs. Lopez-Gonzalez gave Victim around $390 to make the purchase. Victim and Friend left the others to make the deal. While they were away, and unbeknownst to Friend, Victim pocketed some of the money, hiding $200 in his underwear.

¶3 When Friend and Victim rejoined the others, Victim told Lopez-Gonzalez that they "couldn't get the drugs" and that some of the money was "missing." In response, Lopez-Gonzalez "got really mad" and yelled at Victim. Wife and Husband got in the front of Wife's car, and Lopez-Gonzalez, Victim, and Friend got in the back. Lopez-Gonzalez then told Wife to drive them to Tremonton, Utah.

¶4 While on the way, Lopez-Gonzalez pulled out his handgun and hit Victim a number of times in the head with his fist or the gun. He demanded the return of the missing money and threatened to shoot Victim and "blow off [his] balls." Lopez-Gonzalez also warned Victim not to move. When Wife and Husband looked into the back seat, Victim was "bleeding out of his eye." Victim called his aunt on the phone and asked her for money. Victim's phone was then taken from him.

---

1. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly. We present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Reigelsperger*, 2017 UT App 101, ¶ 2 n.1, 400 P.3d 1127 (cleaned up).

¶5     When the group neared Tremonton, Lopez-Gonzalez had Wife stop at a dirt road. Friend left and went home. Meanwhile, Lopez-Gonzalez walked Victim at gunpoint up the dirt road and repeatedly asked, "[W]here's the money?" Lopez-Gonzalez then ordered Victim to take off his pants, shoes, and socks and to lie face down on the ground. As Victim removed his clothes, Lopez-Gonzalez temporarily handed the gun to Husband and began searching the clothes. Victim then gave up the $200, retrieving it from his underwear. Next, Husband returned to the car where Wife was waiting, and Lopez-Gonzalez struck Victim in the back of the head with the gun. He asked, "[D]o you think this is for play?" From a few feet behind Victim, Lopez-Gonzalez shot the gun into the ground. Husband and Wife both heard the gunshot from the car.[2] Lopez-Gonzalez continued to hit Victim until Victim passed out.

¶6     When Victim awoke, his cell phone, pants, shoes, and socks were gone. Victim, "totally covered in blood," had to walk to a hospital for treatment. He required stitches above and below his eye and staples in the back of his head. The orbital socket on the right side of his face was shattered, and at the time of Lopez-Gonzalez's trial Victim still suffered vision problems in his right eye.

¶7     When the police arrested Lopez-Gonzalez and searched his vehicle, they found a gun that Husband later identified at trial as the one that Lopez-Gonzalez wielded. The police also recovered a bullet casing from the dirt road.

¶8     A detective (Detective) interviewed Lopez-Gonzalez at the police station after informing him of his rights. Lopez-Gonzalez told Detective that he had lent bail money to Wife "to make his life better because he purchased marijuana from

---

2. Later, when Wife asked Lopez-Gonzalez whether he had killed Victim, Lopez-Gonzalez told her that he "wouldn't kill him over his money" but he "just had to teach him a lesson."

[Husband]." He also explained that after bailing Husband out of jail, they went to Ogden to buy methamphetamine but it "didn't work out." Lopez-Gonzalez said that when Victim was $200 short, he "was mad" that "somebody was trying to steal his money," and he then "pulled out a gun because he didn't know who [Victim] was" or "what he had."

¶9     Lopez-Gonzalez admitted to Detective that he used the gun to hit Victim five times in the face and in the back of the head. He explained that he pointed the gun at Victim and asked "if [Victim] wanted [him] to shoot his testicles." He also told Victim that he "wasn't going anywhere." Lopez-Gonzalez acknowledged that Victim's phone was taken from Victim in the car. Lopez-Gonzalez stated that he "wanted to teach [Victim] a lesson" and that they drove to the dirt road near Tremonton so that he could "make [Victim] walk back." Lopez-Gonzalez described how he tried to get his money back at the dirt road, including that he directed Victim to remove his clothes, shoes, and socks and that he made Victim lie face down on the ground. Lopez-Gonzalez explained that he then took his money back and took Victim's clothes. Although Lopez-Gonzalez initially denied firing the gun at the dirt road, he later admitted that he "fired it into the ground because he was mad." During this interview, Lopez-Gonzalez never described a time when Victim acted aggressively or made threats.

¶10    The State charged Lopez-Gonzalez with aggravated kidnapping, aggravated robbery, and aggravated assault. It also filed the same charges against Husband and Friend, but they both agreed to plead guilty to lesser charges and to testify against Lopez-Gonzalez.

¶11    At a jury trial, Wife, Victim, Husband, and Friend testified and recounted the events described above. Detective also testified regarding his investigation and his interview with Lopez-Gonzalez.

¶12    Lopez-Gonzalez testified in his own defense. Although he initially began testifying using an interpreter, he soon asked

whether it would "be better" for him to testify in English. After trial counsel told him that "most likely" it was "a little easier for the jury" if he testified in English but that it was "up to" him, Lopez-Gonzalez provided the majority of his testimony in English without the use of an interpreter.

¶13 In his testimony, Lopez-Gonzalez confirmed key aspects of the State's case. For example, he admitted that he hit Victim in the head with the gun and caused his injuries, told Victim that "if he won't behave[] something else will happen[]," took Victim's clothes, and fired a shot in the dirt road. Lopez-Gonzalez also admitted that he told Detective that he did this to Victim "to teach him a lesson."

¶14 Significantly, Lopez-Gonzalez also testified that while the group drove back from the failed drug transaction in Ogden, "[Victim] started getting up to try to crash the car," which caused Lopez-Gonzalez to feel "in danger," and "that's when [Lopez-Gonzalez] pulled [his] weapon" and "hit" Victim. Lopez-Gonzalez insisted that he had mentioned this to Detective. To rebut this testimony, the State recalled Detective as a witness, and Detective testified that Lopez-Gonzalez did not tell him about Victim attempting to grab the wheel of the car.

¶15 The jury found Lopez-Gonzalez guilty as charged. On the special verdict forms, the jury indicated it found that the State had proved beyond a reasonable doubt that Lopez-Gonzalez used a dangerous weapon in commission or in furtherance of the aggravated kidnapping and the aggravated assault. But the jury found that the State had not proved that Lopez-Gonzalez used a dangerous weapon in commission or in furtherance of the aggravated robbery. As a result, the aggravated kidnapping and aggravated assault convictions were subject to a dangerous weapon enhancement, but the aggravated robbery conviction was not.

¶16 The district court sentenced Lopez-Gonzalez to concurrent prison terms of sixteen years to life for aggravated kidnapping, five years to life for aggravated robbery, and fifteen

years for aggravated assault resulting in serious bodily injury. Lopez-Gonzalez appeals.

ISSUES AND STANDARDS OF REVIEW

¶17    Lopez-Gonzalez asks us to reverse his convictions for aggravated robbery and aggravated assault due to ineffective assistance of counsel.[3] "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Ott*, 2010 UT 1, ¶ 16, 247 P.3d 344 (cleaned up).

¶18    He also asks that we reverse his convictions under the cumulative error doctrine. We will reverse under this doctrine "only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (cleaned up).

ANALYSIS

I. Ineffective Assistance of Counsel

¶19    To prove a claim of ineffective assistance of counsel, a defendant must establish both that his "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the first element, the defendant must show that his counsel's performance "fell below an objective standard of reasonableness." *Id.* at 688. Thus, he "must convince us

---

3. Lopez-Gonzalez's briefing challenges all three convictions. But at oral argument before this court, he withdrew his challenge to his aggravated kidnapping conviction. We therefore consider his arguments as pertaining only to his convictions for aggravated robbery and aggravated assault.

that, despite the fact that 'counsel is strongly presumed to have rendered adequate assistance,' counsel's acts or omissions nevertheless fell 'outside the wide range of professionally competent assistance.'" *State v. Nelson*, 2015 UT 62, ¶ 14, 355 P.3d 1031 (quoting *Strickland*, 466 U.S. at 690). The second element requires the defendant to show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In evaluating this element, courts "consider the totality of the evidence before the judge or jury," recognizing that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96.

¶20   "Proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." *State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 (cleaned up). Both elements of the claim "must be present, and if either is lacking, the claim fails and the court need not address the other." *Nelson*, 2015 UT 62, ¶ 12.

¶21   Lopez-Gonzalez asserts that trial counsel provided constitutionally ineffective assistance in a number of ways. In particular, he contends trial counsel failed to (A) object to the allegedly "confusing" verdict forms and jury instructions, (B) propose jury instructions on a lesser included offense for aggravated robbery, (C) propose jury instructions for self-defense, (D) move to suppress some of Lopez-Gonzalez's statements to Detective, (E) adequately investigate and attack the witnesses' credibility with their criminal records and plea bargains, (F) object to Detective's allegedly expert testimony at trial, (G) "offer a theory of defense," (H) instruct Lopez-Gonzalez to answer through an interpreter when he testified at trial, and (I) "prepare a direct examination" of Lopez-Gonzalez. We address each contention in turn.

A.     The Verdict Forms and Jury Instructions

¶22     Lopez-Gonzalez first contends that trial counsel provided ineffective assistance when he did not object to the allegedly "confusing" verdict forms and jury instructions regarding aggravated robbery.[4] We disagree.

¶23     To begin with, Lopez-Gonzalez has not identified any error or other problem in the jury instruction for aggravated robbery and the special verdict form that should have prompted trial counsel to object. Lopez-Gonzalez concedes that the aggravated robbery instruction correctly stated the law and allowed the jury to properly convict him if it found beyond a reasonable doubt that "in the course of committing" robbery, he "used or threatened to use a dangerous weapon as defined in Utah law" or "caused serious bodily injury upon another." *See generally* Utah Code Ann. § 76-6-302 (LexisNexis 2017) (defining aggravated robbery); *id.* § 76-6-301 (defining robbery). Similarly, Lopez-Gonzalez points to no error in the special verdict form, which required the jury to find whether the State had proved beyond a reasonable doubt that Lopez-Gonzalez "used a dangerous weapon in commission or in furtherance of the crime of aggravated robbery." The special verdict form comported with the statute that allows sentences for felony convictions to be increased by one year if the jury finds that a defendant used a dangerous weapon in commission of the crime, and Lopez-Gonzalez has not suggested otherwise. *See id.* § 76-3-203.8.

---

4. In his opening brief, Lopez-Gonzalez also asserts that we should consider his unpreserved complaint about the "confusing" special verdict forms and jury instructions under the plain error exception to our preservation rule. The State responds that any error in this regard was invited, precluding plain error review. In his reply brief, Lopez-Gonzalez concedes the State's point and abandons his plain error argument. We accordingly do not address plain error review on this subject any further.

¶24    Lopez-Gonzalez's argument is instead based entirely on a perceived inconsistency in the jury's verdict. He contends that the jury must have been confused (and thus the instruction and form must have been confusing) because it found him guilty of aggravated robbery, but it did not find that the State had proved that he used a dangerous weapon in commission of that offense. But there are two problems with his argument. First, the jury's verdict is not inconsistent. Because of the differences between the aggravated robbery and the sentencing enhancement statutes, the jury did not need to find that Lopez-Gonzalez *used* the gun in commission of the robbery to find him guilty of aggravated robbery. *Compare id.* § 76-6-302, *with id.* § 76-3-203.8. Rather, it could have found the elements of the crime were met if it concluded that Lopez-Gonzalez *threatened* to use the gun *or* caused Victim serious bodily injury. *See id.* § 76-6-302(1)(a)–(b). Second, even if the jury's decision had been inconsistent, it does not necessarily follow that trial counsel acted unreasonably. And if Lopez-Gonzalez cannot identify a single basis upon which trial counsel should have objected to the instruction or verdict form, he cannot prove that his counsel's performance was objectively unreasonable. Thus, this claim of ineffective assistance of counsel is unavailing.[5]

B.    Lesser Included Offense

¶25    Lopez-Gonzalez next contends that trial counsel rendered ineffective assistance by not requesting a jury instruction on robbery as a lesser included offense of aggravated robbery. To have the jury instructed on a lesser included offense, a defendant is required to show not only that "the charged offense and the

---

5. Lopez-Gonzalez also argues that trial counsel should have objected to the jury instruction and special verdict form related to aggravated assault. But he similarly concedes that this jury instruction was "also technically correct" and does not pinpoint any errors in the jury instruction or the special verdict form. Thus, this argument fails.

lesser included offense have overlapping statutory elements" but also "that the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *State v. Powell*, 2007 UT 9, ¶ 24, 154 P.3d 788 (cleaned up).

¶26 The pertinent difference between aggravated robbery and robbery is that a person commits aggravated robbery if he "uses or threatens to use a dangerous weapon" or "causes serious bodily injury upon another."[6] Utah Code Ann. § 76-6-302(1)(a)–(b) (LexisNexis 2017); *see also id.* § 76-6-301 (defining robbery). Lopez-Gonzalez asserts that the jury's finding on the special verdict form—that the State had not proved that he used a dangerous weapon in commission or in furtherance of aggravated robbery—provides "a rational basis for which to acquit [him] of aggravated robbery and possibl[y] convict him of the lesser included offense." Lopez-Gonzalez's argument misses the mark. The question is not whether the *verdict* provided a rational basis for the lesser included offense,[7] but whether the *evidence* did. *See Powell*, 2007 UT 9, ¶ 24. And in this respect, Lopez-Gonzalez has not addressed the evidence. As a result, he has not shown that the district court would have been obliged to give a jury instruction on robbery as a lesser included offense, and he

---

6. Another variant of aggravated robbery occurs when in the course of committing robbery, a person "takes or attempts to take an operable motor vehicle." Utah Code Ann. § 76-6-302(1)(c) (LexisNexis 2017). Here, the jury was not instructed on that variant.

7. Even if the verdict were relevant to this inquiry, we do not share Lopez-Gonzalez's view of it. As explained, *supra* ¶ 24, the jury could have been of the opinion that Lopez-Gonzalez did not *use* the gun in the robbery, but that he was still guilty of aggravated robbery because he either threatened to use the gun or caused Victim serious bodily injury.

therefore has not established that trial counsel was ineffective for failing to request such an instruction. *See State v. Hauptman*, 2011 UT App 75, ¶ 10, 249 P.3d 1009.

C.  Self-defense

¶27  Lopez-Gonzalez contends that trial counsel rendered ineffective assistance when he did not propose jury instructions for self-defense or argue the theory in closing argument. In support, he relies on his own trial testimony that on the way to Tremonton, Victim "started getting up to try to crash the car" and "that's when [Lopez-Gonzalez] pulled [his] weapon to hit him," and he asserts that "[i]t is apparent . . . that [Victim] did something to provoke [him]."[8] He further asserts that if the jury had been given the option to consider self-defense, his "assault in the vehicle would be justified."

¶28  Utah law provides that "[a] person is justified in threatening or using force against another when and to the extent that the person reasonably believes that force or a threat of force is necessary to defend the person or a third person against another person's imminent use of unlawful force." Utah Code Ann. § 76-2-402(1) (LexisNexis 2017).[9] Once self-defense is adequately raised,[10] the State has the burden "to disprove the

8. In so arguing, Lopez-Gonzalez relies in part on a police report attached as an addendum to his brief. Because that report is not part of the record on appeal, we do not consider it. *See State v. Jaramillo*, 2016 UT App 70, ¶ 27, 372 P.3d 34 (declining to consider on appeal evidence not in the record).

9. This statute has been recently amended, but we cite the version in effect at the time of Lopez-Gonzalez's crimes.

10. "When there is a basis in the evidence, whether the evidence is produced by the prosecution or by the defendant, which would provide *some reasonable basis* for the jury to conclude that

(continued…)

affirmative proposition of self-defense, not just prove guilt, beyond a reasonable doubt." *State v. Garcia*, 2001 UT App 19, ¶ 16, 18 P.3d 1123.

¶29 Even if trial counsel had asked for a self-defense instruction or argued the theory, we are not persuaded that "there is a reasonable probability that . . . the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). In other words, we discern no reasonable likelihood that the jury could have entertained a reasonable doubt as to whether Lopez-Gonzalez acted in self-defense. We reach this conclusion because of the thin evidence supporting a self-defense theory and the strength of the evidence against Lopez-Gonzalez. *See id.* at 696 (explaining that a verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

¶30 No evidence corroborated Lopez-Gonzalez's self-serving trial testimony that Victim tried to grab the wheel of the car. And there was no other evidence that Victim made any threats or that Victim acted aggressively. By contrast, there was ample evidence that Lopez-Gonzalez escalated the situation, pulled out his gun, struck Victim, and threatened him—all to "teach [Victim] a lesson." Four eyewitnesses testified consistently to these events, and their testimonies matched the story that Lopez-Gonzalez told Detective. Indeed, Lopez-Gonzalez's self-defense theory conflicted with his prior statements to Detective.

---

(…continued)
[an act] was done in self-defense, an instruction on self-defense should be given to the jury." *State v. Garcia*, 2001 UT App 19, ¶ 8, 18 P.3d 1123 (cleaned up). For purposes of our analysis, we assume that, under this standard, the district court would have instructed the jury on self-defense had trial counsel requested such an instruction.

¶31 On this record, and taking into consideration the State's burden to disprove the proposition of self-defense beyond a reasonable doubt, *see Garcia*, 2001 UT App 19, ¶ 16, we see no reasonable likelihood that a self-defense argument would have led the jury to view Lopez-Gonzalez's use of force against Victim as "necessary to defend the person or a third person against [Victim's] imminent use of unlawful force," *see* Utah Code Ann. § 76-2-402(1). For this reason, we conclude that Lopez-Gonzalez was not prejudiced by trial counsel's decisions not to propose jury instructions for self-defense and not to argue the theory in closing argument. We therefore reject this claim.

D.      Lopez-Gonzalez's Statements to Detective

¶32 Lopez-Gonzalez contends that trial counsel should have moved to suppress the statements he made to Detective after his arrest, during the car ride to the police station, and before he was given proper *Miranda* warnings. In general, under *Miranda v. Arizona*, 384 U.S. 436 (1966), "'the prosecution may not use statements . . . stemming from custodial interrogation of the defendant' unless certain procedural safeguards were employed, including informing the defendant of his right to remain silent [and] to have his counsel present during questioning." *Layton City v. Carr*, 2014 UT App 227, ¶ 17, 336 P.3d 587 (quoting *Miranda*, 384 U.S. at 444). To succeed on this ineffective assistance claim, Lopez-Gonzalez must show that his *Miranda* rights were actually violated. *See State v. Ferry*, 2007 UT App 128, ¶ 12, 163 P.3d 647; *State v. Kooyman*, 2005 UT App 222, ¶ 31, 112 P.3d 1252.

¶33 In support of his position, Lopez-Gonzalez relies entirely on a police report attached as an addendum to his brief. He claims it indicates that "officers were eliciting incriminating information from [him], while deliberately delaying *Miranda* warnings," and that it "appears [he was] speaking to [the officers] . . . about the case." The police report, however, is "not a part of the record before this court, and we do not consider new evidence on appeal." *See State v. Jaramillo*, 2016

UT App 70, ¶ 27, 372 P.3d 34 (cleaned up). Indeed, "a defendant cannot bring an ineffective assistance of counsel claim on appeal without pointing to specific instances *in the record* demonstrating both counsel's deficient performance and the prejudice it caused the defendant." *State v. Griffin*, 2015 UT 18, ¶ 16, 441 P.3d 1166 (emphasis added); *see also id.* ¶ 16 n.11 ("Our appellate rules require citation to the record for each error alleged on appeal."). Because we cannot consider the police report and Lopez-Gonzalez has not directed us to any supportive record evidence, his claim is grounded only in speculation.[11] And these speculative allegations alone are not sufficient to demonstrate that his *Miranda* rights were violated and that trial counsel should have moved to suppress his statements. *See State v. Munguia*, 2011 UT 5, ¶ 30, 253 P.3d 1082 ("Proof of ineffective assistance of counsel cannot be a speculative matter but must be a demonstrable reality." (cleaned up)); *see also Ferry*, 2007 UT App 128, ¶ 12; *Kooyman*, 2005 UT App 222, ¶ 31. Accordingly, we reject this claim.

E.     The Witnesses' Criminal Records and Plea Bargains

¶34     Lopez-Gonzalez next contends that trial counsel was ineffective in failing to attack the witnesses' credibility with their criminal records and plea bargains.[12] He asserts that trial counsel

---

11. Although Lopez-Gonzalez suggests that "[a] hearing may be required to learn" the content of any conversations during the car ride, he has not moved to remand to the district court for a hearing or the entry of factual findings associated with this claim of ineffective assistance of counsel. *See generally* Utah R. App. P. 23B (outlining the procedure for parties to criminal cases to move for remand to the trial court for entry of findings necessary to determine an ineffective assistance claim).

12. In connection with this ineffective assistance claim, Lopez-Gonzalez complains that trial counsel did not adequately

(continued…)

did not explore "potentially exculpatory evidence" regarding Victim, Husband, and Friend, arguing that "the credibility of each witness was paramount regarding the self defense claim." According to Lopez-Gonzalez, trial counsel also should have used Victim's criminal history to "show his unreliability" and to "cast[] doubt about whether [Victim] was forced into the car and whether he lunged for the steering wheel—endangering everyone in the car." And trial counsel should have used Husband's and Friend's favorable plea deals to show that at trial

---

(…continued)

investigate the witnesses' criminal records and the bases for their plea deals. In support, he attaches extra-record evidence and asks for a hearing to make further inquiries. As explained above, we cannot consider non-record evidence. *See Jaramillo*, 2016 UT App 70, ¶ 27. And, to the extent he seeks relief under rule 23B, his request is not properly made or supported. He makes this request in a footnote in his opening brief. But, as the State points out, a party moving under rule 23B of the Utah Rules of Appellate Procedure to "remand the case to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel," must file a motion that "conform[s] to the requirements of Rule 23." Utah R. App. P. 23B(a)–(b). Rule 23 requires that "an application for an order or other relief shall be made by filing a motion for such order or relief." *Id.* R. 23(a). Lopez-Gonzalez's footnote request for a "23B hearing" is not a motion as contemplated by rule 23, and a request under rule 23B is therefore not properly before us. We further note that Lopez-Gonzalez has not complied with rule 23B's other requirements, including that any such motion shall include or be accompanied by "affidavits alleging facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney" and "that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." *See id.* R. 23B(b).

they were "heaping blame on [Lopez-Gonzalez] to minimize the consequences to themselves."[13]

¶35    Evidence of the witnesses' criminal records and plea bargains was before the jury; it was introduced by the State. In fact, the prosecution mentioned in its opening statement that Friend and Husband had faced the same charges as Lopez-Gonzalez but that they had pleaded guilty to lesser crimes and had agreed to testify against Lopez-Gonzalez. Then, in its case-in-chief, the prosecution explored the witnesses' criminal records and plea deals.

¶36    Regarding Victim, the prosecutor elicited Victim's criminal history on direct examination. For example, Victim testified that he was currently incarcerated and that he had been convicted of three prior felonies. Victim also admitted that he initially lied to the police and said that the June 2017 incident was about a gambling debt because he "didn't want them to know about the drug part." Thus, the State elicited facts about Victim's criminal history and an inconsistency in his story that undermined his credibility.

¶37    Similarly, the prosecutor began his direct examinations of Husband and Friend with their respective criminal records and plea deals. Husband and Friend admitted that they each had an unrelated felony conviction. They also admitted to pleading guilty to lesser charges in connection with the June 2017 incident.

¶38    Because the State highlighted the witnesses' criminal records and plea deals, the State effectively preempted any need

---

13. Lopez-Gonzalez also notes that Wife "was married to [Husband] and had incentives to protect him, and to avoid charges herself." But because he does not further develop an argument regarding possible impeachment of Wife, we do not consider this argument.

for trial counsel to introduce this information in attacking their credibility. The jury already knew that Victim, Husband, and Friend all had issues that might undermine the veracity of their accounts. Yet these witnesses all testified to a largely consistent story, and Lopez-Gonzalez's own statements confirmed the essential details of that story. In light of all this evidence before the jury, we are not persuaded that the evidentiary picture would have been materially altered if trial counsel had replowed the same ground. *Cf. State v. Lyman*, 2001 UT App 67U, para. 4 (seeing no prejudice where trial counsel failed to call witnesses that would have testified to facts already in evidence). We thus conclude that Lopez-Gonzalez has not shown prejudice from trial counsel's claimed deficient performance in this regard and that this claim is also unavailing.

F.     Expert Testimony

¶39     Lopez-Gonzalez contends that trial counsel was ineffective for not objecting to "expert statements elicited from the detective about whether the force of the strikes could be lethal, and whether they were reasonable in the context of self defense." He asserts that this testimony was prejudicial because it went "toward an element of why the offenses were aggravated" and undermined any self-defense claim.

¶40     At trial, Detective testified that he had been involved in cases with people who have been hit in the head with a hard weapon and some of those people had died. The prosecutor then asked him, "[I]s there a risk of killing somebody by hitting them in the head with a hard object like that?" Detective responded, "Absolutely." The prosecutor later asked whether it is "reasonable to use this kind of force, hit somebody in the head with an object because they took some money from you." Detective answered, "No."

¶41     In some cases, trial counsel's decision not to object to expert testimony from a lay witness can fall below an objective standard of reasonableness. *See, e.g., State v. Doutre*, 2014 UT App

192, ¶ 21, 335 P.3d 366. But Lopez-Gonzalez has not grappled with the question of whether the challenged testimony is actually expert testimony as defined by the Utah Rules of Evidence. *See generally* Utah R. Evid. 702. Nor has he demonstrated that there is no sound basis for trial counsel's decision not to object. *See Doutre*, 2014 UT App 192, ¶¶ 12–13, 23 (indicating that if there is a reasonable tactical basis for trial counsel's actions, "we will not consider trial counsel's representation to be constitutionally deficient"); *see also State v. Hulse*, 2019 UT App 105, ¶ 36 n.9, 444 P.3d 1158 (same). As a result, Lopez-Gonzalez has not carried his burden of proving this claim.

G.      Theory of the Defense

¶42    Lopez-Gonzalez argues that trial counsel was ineffective by failing to offer or develop "a theory of defense." In so arguing, he criticizes trial counsel for declining to give an opening statement; not asking cross-examination questions "that might bring out evidence in support of the self defense theory or that [Victim] was trying to escape and in so doing, scared [Lopez-Gonzalez]"; and "barely address[ing] the self defense claim" in closing argument.

¶43    This claim of ineffective assistance centers on Lopez-Gonzalez's underlying belief that a self-defense theory, if pursued with greater effort, would have succeeded. But Lopez-Gonzalez has not shown how the evidence would have been materially different had trial counsel done more to advance the self-defense theory. And given the evidence in the record before us, we see no reasonable likelihood of a different result even if trial counsel vigorously pushed a self-defense theory. As discussed, *supra* ¶¶ 29–31, the overwhelming evidence and Lopez-Gonzalez's own corroborating statements strongly support his convictions, and the likelihood that the jury would be persuaded by a later asserted self-defense theory was remote. As a result, we conclude that Lopez-Gonzalez was not

prejudiced by trial counsel's failure to more strongly pursue that theory.

H.      Non-use of an Interpreter

¶44    Lopez-Gonzalez contends that trial counsel provided ineffective assistance by allowing Lopez-Gonzalez to testify in English, his second language, instead of using the Spanish-language interpreter. Although Lopez-Gonzalez began his testimony with an interpreter, he soon asked whether it would "be better" if he spoke in English or Spanish, noting that trial counsel "recommended [that he] have an interpreter . . . for any misunderstanding that [he] might have." Trial counsel responded, "It's just up to you, whatever's most comfortable for you. If you can do it in English, that's a little easier for the jury, most likely." Lopez-Gonzalez then said "[o]kay" and proceeded to testify in English and without an interpreter.

¶45    To begin with, Lopez-Gonzalez himself decided to testify in English. Moreover, he has not established that it was objectively unreasonable for counsel to permit Lopez-Gonzalez to testify without an interpreter. *Cf. State v. Doutre*, 2014 UT App 192, ¶ 12, 335 P.3d 366 (concluding that trial counsel "was not deficient for failing to insist, against her client's clearly stated wishes, that [the defendant] attend the jury view"). And he has not made any attempt to show prejudice. Consequently, we reject this claim.

I.      Direct Examination of Lopez-Gonzalez

¶46    Lopez-Gonzalez argues that trial counsel was ineffective in the way he elicited his testimony on direct examination. With little discussion or support, Lopez-Gonzalez asserts that trial counsel invited his testimony in narrative form and merely "provoke[d] unsolicited meandering direct testimony." But these assertions alone are insufficient to overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *See Strickland v.*

*Washington*, 466 U.S. 668, 689 (1984). He therefore has not shown ineffective assistance in this regard.

## II. Cumulative Error

¶47　Finally, Lopez-Gonzalez asserts that the cumulative effect of trial counsel's ineffective assistance requires that he be granted a new trial. Under the cumulative error doctrine, we will reverse "only if the cumulative effect of the several errors undermines our confidence that a fair trial was had." *State v. Martinez-Castellanos*, 2018 UT 46, ¶ 39, 428 P.3d 1038 (cleaned up). In other words, reversal is warranted under the cumulative error doctrine only when "there is a reasonable probability that, but for the several errors, a different verdict or sentence would have resulted." *Id.* ¶ 39 n.27.

¶48　The evidence of Lopez-Gonzalez's guilt was overwhelming. Multiple witnesses testified consistently about Lopez-Gonzalez's criminal acts, and Lopez-Gonzalez himself admitted to the key facts underlying the charges against him. To the extent we have assumed errors in this case, we conclude that, even viewing them collectively, there is no reasonable probability that absent those errors a different verdict would have resulted. *See id.* The cumulative error doctrine therefore does not apply.

## CONCLUSION

¶49　Lopez-Gonzalez has not established any one of his claims of ineffective assistance of counsel, and reversal is not warranted under the cumulative error doctrine. Accordingly, we affirm.

_____